Leroy DUDLEY, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 86–1598.

United States Court of Appeals,
First Circuit.

Submitted Oct. 10, 1986.

Decided Feb. 25, 1987.

Brian J. Farrell and Lovett, Schefrin & Gallogly, Ltd., Providence, R.I., on brief, for plaintiff, appellant.

John F. Aronson, Asst. Regional Counsel, Dept. of Health and Human Services, Lincoln C. Almond, U.S. Atty., and Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., on brief, for defendant, appellee.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

Claimant Leroy Dudley filed an application on March 16, 1983 for Social Security disability benefits, alleging a heart condition. On December 28, 1982, claimant had been denied benefits for the same condition on an earlier application which had alleged a November 14, 1980 onset date. In the instant application claimant sought an award of benefits covering the period from November 26, 1980 forward, as well as to reopen the previous denial of benefits for the November 14, 1980–December 28, 1982 period. The Administrative Law Judge considered the new application for benefits *de novo* and, after a hearing, found claimant not disabled at step 4 of the sequential evaluation process on the ground that claimant could perform his former work as a labeller. The ALJ also found that there was no basis for reopening the prior denial of benefits. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed the Secretary. Claimant appealed. We affirm.

There is substantial evidence in the record to support the Secretary's finding that claimant did not prove that his impairment constitutes one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). The presence of such an impairment would require the Secretary to find disability under 20 C.F.R. § 404.1520(d). The burden to demonstrate the existence of such an impairment rests with the claimant. *See Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6–7 (1st Cir.1982); *Pelletier v. Secretary of Health, Education and Welfare,* 525 F.2d 158, 160 (1st Cir.1975).

Claimant first argues that his impairment satisfies § 4.02 of the listings, which requires "congestive heart failure (manifested by evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema)" accompanied by certain other features. Although there was evidence, such as the medical findings of Dr. Carnevale, claimant's treating cardiologist, that claimant suffers from congestive heart failure, there was also substantial evidence to the contrary. For example, Dr. Mancini, a consulting internist, found that although claimant had "documented congestive cardiomyopathy," he had no congestive symptoms except persistent shortness of breath. Dr. Mancini concluded, "I find no evidence for any congestive failure at this time." Dr. Most, a cardiologist and internist who testified at the hearing as a medical advisor, testified that claimant did not satisfy § 4.02 because there was "no physical evidence of [vascular] congestion." In so concluding, Dr. Most relied on numerous medical reports noting the absence of edema or liver enlargement, which he found indicated an absence of vascular congestion. The ALJ was entitled to rely on this evidence in the face of contradictory findings. *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir.1981). The opinion of Dr. Carnevale is not entitled to greater weight merely because Dr. Carnevale was claimant's treating physician rather than a consulting physician. *Sitar v. Schweiker,* 671 F.2d 19, 22 (1st Cir.1982); *Perez v. Secretary of*

*Health, Education and Welfare,* 622 F.2d 1 (1st Cir.1980).

Claimant further argues that his impairment met the requirements of § 4.04 of the listings for "ischemic heart disease with chest pain of cardiac origin." However, none of the physicians who examined claimant made a diagnosis of ischemic heart disease. Moreover, even had claimant established the presence of ischemic heart disease, the listing is not met if the report of an acceptable treadmill exercise test does not show any of the changes specified in § 4.04 A. Claimant submitted to a treadmill exercise test on February 2, 1982, and did not exhibit any of the responses mentioned in the listing.

■ Claimant contends that his treadmill exercise test was not "acceptable" under § 4.00 G.2 because a heart rate of at least "85 percent of the maximum predicted heart rate" was not achieved during the test. However, § 4.00 G.2 requires exercise to that heart rate "unless it becomes hazardous to exercise to the heart rate." The medical advisor, Dr. Most, testified at the hearing that the test was acceptable, and emphasized that such tests require subjective, on-the-spot evaluation by the tester. In claimant's case, the tester noted claimant's dropping blood pressure and subjective complaints of "3 + fatigue and hollow pressure" in his heart. Accordingly, as Dr. Most testified, the tester elected to terminate the test because "you can't force the patient or push the patient to exercise beyond the weakness he feels." The Secretary was entitled to rely on this opinion of the medical advisor in finding the test acceptable under § 4.00 G.2. *See Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 223–24 (1st Cir.1981); *Guzman Diaz v. Secretary of Health, Education and Welfare,* 613 F.2d 1194, 1199 n. 7 (1st Cir.1980).

■ Claimant next attacks the Secretary's finding that claimant could return to his former work as a labeller and, accordingly, was not disabled at step 4 of the sequential evaluation process, 20 C.F.R. § 404.1520(e). Claimant first asserts that he worked as a labeller for only three months, too short a time for that work to be considered "past relevant work" for purposes of § 404.1520(e). Under applicable regulations, however, past work experience may be considered if it "lasted long enough for [claimant] to learn to do it...." 20 C.F.R. § 404.1565(a). Social Security Ruling 82–62 provides that the duration of work "should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work." West's Social Security Reporting Service, *Rulings,* at 810. Claimant introduced no evidence to suggest that three months is insufficient time to learn to perform labelling work. Although a vocational expert did testify that claimant's work as a labeller would not be vocationally relevant if claimant "brought no experience to the position and was supervised," claimant introduced no evidence that he entered the position without any helpful experience whatsoever or that he did not operate independently in the position. Yet at step 4, the burden was on claimant to demonstrate inability to perform his former work, *Lopez-Diaz v. Secretary of Health and Human Services,* 673 F.2d 13, 15 (1st Cir.1982), and, specifically, to clarify the nature of his former work to support his contention that it was too short in duration to be relevant. *See Gray v. Heckler,* 760 F.2d 369, 372 (1st Cir.1985); *Pitchard v. Schweiker,* 692 F.2d 198, 201 (1st Cir.1982).

■ Moreover, given the relatively straightforward and uncomplicated nature of the work—putting labels on garments—we cannot say that the Secretary was unreasonable in assuming it could be adequately learned in three months in ordinary circumstances. Accordingly, we find substantial evidence to support the Secretary's determination that the duration of claimant's prior work as a labeller was sufficient for that work to constitute "past relevant work" for purposes of 20 C.F.R. § 404.-1520(e).

The Secretary determined that although claimant could not perform all of the actual duties of his former job as a labeller (because, for example, they included climbing ladders), claimant nevertheless could perform the customary duties of labelling work (which do not include climbing). The Secretary was correct in so framing his inquiry, since a claimant "does not make a prima facie showing of disability merely by establishing that she cannot return to a particular prior job," but rather "must establish an inability to return to her former *type* of work." *Gray v. Heckler,* 760 F.2d 369, 372 (1st Cir.1985) (emphasis in original); *Pelletier v. Secretary of Health, Education and Welfare,* 525 F.2d 158, 160 (1st Cir.1975). The Secretary permissibly credited interrogatory responses of a vocational expert stating that the labelling job is usually sedentary in terms of lifting and carrying requirements (i.e., involves lifting no more than 10 pounds at a time, *see* 20 C.F.R. § 404.1567(a)), is usually performed in the sitting position, involves operation of foot and hand controls, may require the labeller to stand and walk 5–10 feet to obtain materials, and does not usually require climbing.

■ Substantial evidence of record supported the Secretary's finding that claimant could perform labelling work, as described by the vocational expert, despite his heart condition. Dr. Urban, a consulting internist, evaluated claimant's residual functional capacity and concluded that he could sit for eight hours, stand four hours, walk three hours, and lift or carry 10 pounds frequently. Dr. Urban also stated that claimant "possibly" could use his feet for repetitive movements, as in pushing and pulling of leg controls. Dr. Mancini, another consulting internist, found that claimant "could probably do a full range of light work." Light work by definition involves "some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Although there was no additional record evidence to suggest that claimant could operate foot controls, the burden at step 4 of the sequential evaluation process was, again, on claimant to show that he could not perform his past work. *Lopez-Diaz,*

*supra,* 673 F.2d at 15. Claimant introduced no medical evidence specifically suggesting inability to operate foot controls. Claimant relied solely on his own testimony of numbness in his legs, testimony which Dr. Most, the medical advisor, stated was somewhat inconsistent with the results of claimant's treadmill test. Dr. Most testified that "one wouldn't expect [claimant's] cardiac disability would lead to such a fragile symptomatic condition." Accordingly, we conclude that the Secretary's finding that claimant had not demonstrated inability to return to work as a labeller was adequately supported by the evidence of record. In view of this holding, claimant's insistence that he proved he cannot perform the full range of light work is irrelevant.

■ In denying benefits, the ALJ specifically found no basis for reopening the Secretary's prior denial of benefits, of which claimant did not seek judicial review. This decision not to reopen the prior application is not subject to judicial review by this court. 42 U.S.C. § 405(g) authorizes judicial review of "any final decision of the Secretary made after a hearing...." It is well-settled that, because the "final decision of the Secretary" refers to the Secretary's initial substantive decision on a claim for benefits, § 405(g) "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits." *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); *Rios v. Secretary of Health, Education and Welfare,* 614 F.2d 25 (1st Cir.1980). Although judicial review may be afforded in "rare instances where the Secretary's denial of a petition to reopen is challenged on constitutional grounds," *Califano, supra,* 430 U.S. at 109, 97 S.Ct. at 986, claimant has raised no colorable constitutional issues here.

In any event, the prior application covered only a period of twelve days (November 14–26, 1980) beyond the time covered by the second application. The second ALJ, rather than invoke the doctrine of res judicata, considered the entirety of claimant's

second application *de novo* despite the substantial overlap with the prior decision. Since the second ALJ reached a finding of no disability that we now uphold, claimant has little basis for complaint about the prior decision.

The judgment of the district court is *affirmed.*