Sandra SURANIE

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.

Civ. A. No. 89–0351–T.

United States District Court,
D. Rhode Island.

March 25, 1992.

Brian J. Farrell, Providence, R.I., for plaintiff.

Everett Sammartino, Asst. U.S. Atty., Dept. of Justice, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This case is before the Court for review of a Magistrate Judge's Findings and Recommendation issued pursuant to 28 U.S.C. § 636(b)(1)(B) (1988). The Magistrate Judge recommends reversal of a decision by the Secretary of Health and Human Services (the "Secretary") denying Sandra Suranie's claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g) (1988). For reasons hereinafter stated, the Court rejects that recommendation and affirms the Secretary's decision.

## PROCEDURAL HISTORY

This case began when the Social Security Administration denied Suranie's initial application for disability insurance benefits and her subsequent request for reconsider-

ation. (Tr. at 47–60, 63–72). Suranie's claim was then considered *de novo* by an administrative law judge ("ALJ") who found that she was not disabled within the meaning of Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (1988). (Tr. at 16–19). The ALJ's determination became the final decision of the Secretary when the Appeals Council denied Suranie's request for review. It is that decision that has been appealed to this Court.

## FACTS

The record reveals that in February, 1987, Sandra Suranie was 48 years old and employed as a utilization review nurse at Woonsocket Hospital. (Tr. at 30–31). Her job consisted of reviewing patients' charts and medical records, consulting with physicians and telephoning insurance companies to substantiate the levels of care provided by the hospital. (Tr. at 31). In her testimony before the ALJ, Suranie described her duties to include such tasks as removing patients' charts from the racks in which they were stored and reviewing them either while standing at a counter near the nurses' station or while sitting in a room utilized by nurses during their breaks. (Tr. at 31–32, 35). She stated that her job was performed "mostly sit ... mostly standing and walking" and that the heaviest things she had to lift or carry were stacks of charts weighing "probably ten pounds and over." (Tr. at 31–32).

Prior to February 12, 1987, Suranie had a history of pain in her neck and left arm that apparently resulted from an injury she sustained in 1981 while reaching for a file. That injury was aggravated in 1985. (Tr. at 32, 98). An EMG performed in October, 1985, revealed evidence of mild to moderate neuropathic process affecting the C7 nerve roots. (Tr. at 98–99). However, Suranie underwent physical therapy and was able to continue working. (Tr. at 33).

Suranie testified that she reinjured herself on February 12, 1987, and has been unable to work since that time because of severe pain ranging from her neck and shoulder down into her left arm and thoracic area. (Tr. at 32–33). She stated that the pain prevents her from sitting or standing for more than twenty minutes at a time and from walking more than half of a block. She also stated that she has difficulty lifting more than ten pounds, bending and/or reaching. As a result, she claims that she cannot perform her duties as a utilization review nurse. (Tr. at 29–46).

An MRI performed in September, 1987, showed Suranie's cervical spine to be within normal limits. (Tr. at 109). Furthermore, a neurological examination two weeks later revealed "no evidence of cervical radiculopathy or of neuropathy of the left upper extremity." (Tr. at 110). However, an arterial study performed shortly thereafter showed abnormalities "consistent with thoracic outlet syndrome of the left shoulder." (Tr. at 121). Based on that finding and Suranie's continued complaints of pain, her treating physician, Dr. DiRobbio, concluded that Suranie "appears to have a chronic pain syndrome from a thoracic outlet syndrome." (Tr. at 136–37).

In his Physical Capacities Evaluation, Dr. DiRobbio states that Suranie can sit, stand and/or walk for three hours at a time. On the other hand, he also states that she can sit for a total of only four hours and stand and walk for a total of only two hours during an eight hour day. Dr. DiRobbio concluded that Suranie was capable of repetitive fine manipulations using both arms as well as occasional bending, climbing and carrying objects weighing up to ten pounds. He found no impediments to squatting or to grasping, pushing or pulling with the right arm. However, he did express the opinion that Suranie was incapable of grasping, pulling or pushing with her left arm. (Tr. at 138).

## ALJ'S FINDINGS

As already noted, the ALJ determined that Suranie was not entitled to disability benefits. In so doing, he made the following findings:

3. The medical evidence establishes that the claimant has some left shoulder and arm discomfort due to thoracic outlet syndrome, but ... she does not have an impairment or combination of

impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The severity of pain and the degree of resulting impairment alleged by the claimant are greatly exaggerated, and her testimony is not credible.

5. Not withstanding some left shoulder and arm discomfort, the claimant has retained the residual functional capacity to lift and carry up to 10 pounds, to sit for 4 hours and stand and walk for two hours each during an eight hour work day, but she is unable to use her left hand for operation of controls, grasping or reaching and she is occasionally able to bend, squat, crawl and climb.

6. The claimant's past relevant work as a utilization review nurse did not require the performance of work-related activities precluded by the above limitations (20 CFR 404.1565).

(Tr. at 18–19).

In explaining the basis for those findings, the ALJ stated:

The severity of pain and the extent of incapacity the claimant alleges is markedly exaggerated and her testimony is entirely unreliable. A more reasonable assessment of the claimant's capabilities and limitations was submitted by the treating physician Dr. DiRobbio with his most recent report. The claimant was considered able to sit during four hours of an eight hour work day and stand and walk for two hours each. She is considered able to lift up to 10 pounds but to be impaired in use of her left hand for grasping and operation of arm controls. Reaching was also said to be impaired (Exhibit 20). This is the greatest degree of impairment which could reasonably be expected to result from a left shoulder disorder which is the claimant's only medically determinable impairment.... The claimant's responsibility was to review patient's records to ensure that patients required a hospital level of care. She testified that this job required her to walk to different locations in the hospital and to sit while reviewing records. The

only articles lifted were files of patients (sic) records. From the point of view of residual functional capacity, this was an ideal job for the claimant, and the Administrative Law Judge believes that the claimant could have continued performing this job, notwithstanding some left shoulder and arm discomfort. Then, too, the secondary gain involved in the pending worker's compensation case is all too obvious. Therefore, it is found that the claimant has not been unable to engage in substantial gainful activity, and she is not entitled to Disability Insurance Benefits.

(Tr. at 18).

## STANDARD OF REVIEW

Section 636(b)(1) requires the Court to make a *de novo* determination with respect to those portions of a Magistrate Judge's report and findings to which objection is made. In reviewing the Secretary's decision to deny the plaintiff benefits, the issue the Court must consider is whether that decision is supported by "substantial evidence." 42 U.S.C. § 405(g) (1988); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir. 1981). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

In making its assessment, the Court looks to the Social Security Administration's regulations defining disability. It must also bear in mind that determinations regarding factual issues and the credibility of witnesses are entrusted to the Secretary whose findings should be accorded great deference. *Frustaglia v. Secretary of Health and Human Services*, 829 F.2d 192, 195 (1st Cir.1987); *Rodriguez*, 647 F.2d at 222. However, the Court has the responsibility to scrutinize the record as a whole and judge whether it reasonably supports the Secretary's decision. *Rodriguez*, 647 F.2d at 222.

## DISCUSSION

The regulations establish a five part test for determining whether an individual is disabled. 20 C.F.R. § 404.1520 (1985). The portion of the test that is at issue in this case is whether the claimant is capable of performing work that she has done in the past. 20 C.F.R. § 404.1520(e). In order to be considered disabled, the claimant must bear the burden of establishing that she is unable to perform such work. *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 7 (1st Cir.1982).

Suranie bases her appeal from the Secretary's decision on two grounds. First, she contends that the ALJ erred in discounting her subjective complaints of pain. Second, she argues that the ALJ's own findings demonstrate that she was unable to perform her prior job.[1]

### A. *Complaints of Pain*

■ The significance of a claimant's statements with respect to pain or other subjective symptoms in determining whether that claimant is disabled is governed by 42 U.S.C. § 423(d)(5)(A) (1988). That section says:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a con-

clusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (1988).

As the First Circuit observed in *Avery v. Secretary of Health and Human Services*, once "a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged" is established, "other evidence including statements of the claimant or his doctor, consistent with the medical findings, shall be part of the calculus." 797 F.2d 19, 21 (1st Cir.1986).

*Avery* makes it clear that a claimant's subjective complaints regarding limitation of function because of pain must be considered even though the degree of pain cannot be corroborated by objective medical findings and that, in such cases, the adjudicator must seek detailed information bearing on the presence or absence of such pain. *Id.* at 22–23. However, under the statute, the claimant's complaints are not conclusive. Thus, *Avery* recognizes that the complaints must be both credible and consistent with the medical evidence.

[S]o long as statements of a claimant or his doctor are *not inconsistent* with the objective findings, they could, *if found credible* by the adjudicator, permit a find of disability where the medical findings alone would not.

*Avery*, 797 F.2d at 21 (emphasis added).

In this case, the ALJ adequately sought and considered detailed information regarding Suranie's complaints of pain and its effects on her ability to function. Suranie's testimony, both in the presentation of her case and in response to specific inquiries by the ALJ, included a detailed description of the nature, intensity and duration of the pain and precisely how it limited her activities. In addition, she testified about the efforts made to alleviate her pain through the use of medication. (Tr. at 34).

In discounting those complaints, the ALJ relied partly on the Physical Capacities Evaluation submitted by Dr. DiRobbio and partly on his observations of the plaintiff while she testified. Thus, he cited marked differences between Dr. DiRobbio's assess-

---

1. Since this is a *de novo* review, the Court will address both of plaintiff's arguments even though the Magistrate found no need to consider the second one.

ment of the claimant's limitations and the claimant's own statements. He also noted that during the course of the hearing, the claimant alternated standing and sitting "with no outward sign of any distress." (Tr. at 17). Finally, he concluded that Suranie's complaints were not consistent with the medical diagnosis of thoracic outlet syndrome made by Dr. DiRobbio. (Tr. at 18).

Such judgments are quintessential questions of fact to be resolved by the ALJ who hears the evidence first hand and is in a far better position to make such determinations than a reviewing Court presented with nothing more than a cold record. Consequently, the ALJ's factual findings must be accepted if supported by substantial evidence. 42 U.S.C. § 405(g) (1988). In making those findings, "the ALJ is entitled to consider 'the consistency and inherent probability of the testimony' [and] where there are inconsistencies in the record, the ALJ may discount subjective complaints of pain." *Frustaglia v. Secretary of Health and Human Services*, 829 F.2d 192, 194 n. 1 (1st Cir.1987) (citations omitted). In addition, the ALJ is entitled to take into account his observations of the claimant's demeanor while testifying. That is precisely what the ALJ did in this case.

B. *Ability to Perform Prior Work*

Suranie also contends that the ALJ's findings regarding her physical limitations are inconsistent with his conclusion that she was capable of performing her prior job as a utilization review nurse. The gist of that argument is that, in her disability report, the plaintiff described her job as a utilization review nurse to include using a computer, standing, or walking for an estimated six hours per day, and carrying files that she testified could weigh more than ten pounds. (Tr. at 85–86, 31, 32–35).

▮▮ The Court finds that argument unpersuasive for several reasons. First, the burden is on the claimant to demonstrate an inability to perform her former type of work. *Dudley v. Secretary of Health and Human Services*, 816 F.2d 792, 795 (1st Cir.1987). That burden is not met by showing that the claimant is unable to perform every task associated with the job in precisely the same manner that she performed them before the alleged injury. In this case, the evidence reveals nothing inherent in the duties of a utilization review nurse that requires sitting for more than four hours or standing or walking for more than two hours each during an eight hour work day. No reason was offered why Suranie could not review files while sitting down rather than while standing at the nurses' station. Nor is there any evidence as to how often she is called upon to lift stacks of charts weighing more than ten pounds or any explanation why fewer of them could not be lifted at one time. Finally, there is nothing to indicate that her ability to use a computer has been impaired. On the contrary, Dr. DiRobbio's evaluation states that she is capable of fine manipulation with both arms.

Moreover, contrary to Suranie's contention, there is nothing in the ALJ's decision indicating that he viewed Suranie's rough estimates regarding the amount of time she spent walking and standing or the weight of the stacks of files she sometimes lifted as definitively establishing minimum qualifications for the performance of her job. Rather, he considered the overall nature of her responsibilities as a utilization review nurse and concluded that she was capable of performing the kinds of tasks necessary to discharge them. That conclusion is supported by Dr. DiRobbio's opinion that Suranie was capable of sitting, standing, and/or walking for up to three hours at one time as well as occasional lifting and carrying of objects weighing up to ten pounds; occasional bending, crawling and climbing; frequent squatting and fine manipulation with both arms. (Tr. at 138).

CONCLUSION

In sum, the Court concludes that the ALJ's findings regarding the degree of pain experienced by Suranie are supported by substantial evidence. Nor does the Court perceive any inconsistency between the ALJ's findings with respect to Sura-

nie's physical capabilities and his conclusion that she was able to perform the duties of a utilization review nurse. Therefore, the Court rejects the Magistrate Judge's Findings and Recommendation and affirms the Secretary's decision.

IT IS SO ORDERED.