February 3, 1993
 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1829

 ANA GIMENEZ,

 Plaintiff, Appellant,

 v.

 SECRETARY OF HEALTH AND HUMAN SERVICES,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jaime Pieras, Jr., U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Torruella and Cyr, Circuit Judges.
 

 

Salvador Medina De La Cruz on brief for appellant.
 
Daniel F. Lopez Romo, United States Attorney, Jose Vazquez
 
Garcia, Assistant United States Attorney, and Jan B. Brown, Assistant
 
Regional Counsel, Department of Health and Human Services, on brief
for appellee.

 

 

 Per Curiam. Claimant, Ana M. Gimenez, appeals from
 

a district court judgment affirming the decision of the

Secretary of Health and Human Services that she is not

entitled to Social Security disability benefits. We affirm.

 I.
 

 Claimant applied for disability benefits on

November 7, 1989. She claimed an onset date of December 31,

1988; her insured status expired on December 31, 1992. At

the time she filed her application, she was fifty years old.

Claimant's alleged impairments included herniated discs, left

hand injury, migraine headaches, osteoporosis, pinched nerves

and cardiac arrythmia. Her claim was denied initially and

upon reconsideration. An administrative law judge (ALJ) held

a hearing and determined that claimant could perform her past

work. The Appeals Council denied claimant's request for

review. Thus, the ALJ's decision became the final decision

of the Secretary.

 From her testimony at the hearing and the

disability report completed by claimant, the following

evidence emerges. Claimant worked for the same company for

nineteen years until it closed in December 1988. While she

was there she held several positions. She began working as

an accounting clerk. In this position, she took care of the

accounts receivable books and did filing. Her next position

as a productions clerk involved keeping handwritten

production reports and assisting with taking inventory. She

then became an inventory control clerk and worked solely on

keeping track of inventory. These positions generally

required her to be seated fifty percent of the time.

Claimant's last position was as a receptionist. At this job,

she sat all of the time. She stated that she used both of

her hands for tasks such as operating a calculator and

working the switchboard.

 Claimant sustained a back injury in 1980 and

asserted that due to back and hip pain, she could not remain

in one position too long; she often had missed work due to

this pain. After her job ended in December 1988, she tried

working as a drug store clerk. This job lasted one week

because claimant could not stand. Claimant also alleged pain

in her left big toe, left leg and right knee. She stated

that due to left foot spurs the foot would swell so much that

she could not stand. Claimant receives injections for the

pain in her knees. She also takes other medication for the

pain but is limited in the amount she can use due to her

cardiac problems. This medication gives her "some relief"

from the pain.

 As for her headaches, claimant testified that, at

the time of the hearing, she had been suffering from

migraines on a daily basis for the past six years. During a

migraine attack, she is unable to concentrate, read or think

and cannot tolerate light. The medication she takes,

however, alleviates the symptoms.

 -3-

 Claimant stated that she also suffered from pain in

her left shoulder, arm, hand and fingers. She averred that

the nerves in her fingers are pinched and that, as a result,

she cannot perform any tasks with her left hand (claimant is

left-handed). Specifically, her left hand becomes swollen,

cramped and numb; she cannot uncurl her fingers to open her

hand all the way. She testified that her right hand was

beginning to develop similar symptoms.

 Claimant shares a duplex with relatives. She is

able to take care of her personal needs. Her mother and

sister help with the cooking. She sweeps and mops about once

or twice a month, washes dishes, irons and takes out the

trash. Her mother does all the laundry because of claimant's

problems with her hands. Claimant goes to church when she

can, drives an automobile and does her household shopping

with help from relatives. However, she cannot do heavy

household cleaning chores and yard work. She reads, watches

television and receives visitors two to three times a month.

She spends a lot of time in a prone position due to her

headaches.

 The ALJ determined that claimant suffered from a

combination of impairments including degenerative joint

disease, essential hypertension, left trapezius myositis,

mild right and left carpal tunnel syndrome and a painful left

foot hallux valgus (angulation of great toe). He noted that

 -4-

one physician had reported that claimant suffered from an

anxiety disorder but that claimant never had received

treatment for it. Thus, he determined, this mental condition

did not reduce, in any significant way, her capacity for the

performance of basic work activities. He credited claimant's

subjective complaints of disabling pain only to the extent

that her residual functional capacity was limited to the full

range of light exertion. He then concluded that claimant

could perform her past work.

 II.
 

 A claimant for Social Security disability benefits

bears the initial burden of establishing that he or she

cannot perform past relevant work. Goodermote v. Secretary
 

of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982).
 

This burden includes proving that a claimant is prevented

from returning to his or her type of work generally, not
 

solely to the particular job. See Dudley v. Secretary of
 

Health and Human Services, 816 F.2d 792, 795 (1st Cir. 1987)
 

(per curiam); Gray v. Heckler, 760 F.2d 369, 372 (1st Cir.
 

1985) (per curiam). Our standard of review under the Social

Security Act is whether the Secretary's determination is

supported by "substantial evidence." 42 U.S.C. 405(g).

Although the record may support more than one conclusion, we

will uphold the Secretary if "a reasonable mind, reviewing

the evidence in the record as a whole, could accept it as

 -5-

adequate to support his conclusion." Rodriguez v. Secretary
 

of Health and Human Services, 647 F.2d 218, 222 (1st Cir.
 

1981). The resolution of conflicts in the evidence is for

the Secretary, not the courts. Id.
 

 On appeal claimant presents essentially three

arguments: (1) the severity of her carpal tunnel syndrome

prevented her from performing the full range of both light

and sedentary work; (2) due to her back and foot conditions,

she could not sit or stand for sufficient periods of time to

engage in any work; and (3) the ALJ did not properly credit

her allegations of pain. Before turning to the merits of

these claims, we note that this is an especially sparse

record. Claimant's evidence consists of three very brief

progress notes from the State Insurance Fund, four cursory

responses to Social Security disability determination

questionnaires prepared by claimant's treating physicians and

two radiology reports. In addition, the Secretary submitted

the record to two non-examining doctors who completed

residual functional capacity (RFC) forms and had claimant

examined by a consultative rheumatologist. We will discuss

this evidence in light of claimant's issues on appeal.

 1. Claimant argues, that, based upon her

testimony, the carpal tunnel syndrome is so severe that it

amounts to a serious nonexertional impairment. She refers to

Social Security Ruling (SSR) 83-14, entitled Capability to do

 -6-

Other Work -- the Medical-Vocational Rules as a Framework for

Evaluating a Combination of Exertional and Nonexertional

Impairments. Although not directly on point, this ruling

states that sedentary work requires good use of the fingers

and hands. Given this, claimant concludes, the ALJ was

required to secure the testimony of a vocational expert to

assess the extent to which her carpal tunnel syndrome eroded

the occupational base for light and sedentary work.1 Id.
 

 We do not believe that the ALJ erred in not

securing such testimony. In claimant's medical evidence,

there is only one reference to any impairment involving her

hands. In an arthritis medical questionnaire, Dr. Victor M.

Gonzalez states that claimant has swelling of the joints of

her left hand and that the fourth finger of her left hand is

a "trigger finger." He provided no further explanation

despite the specific request for "a detailed description of

 

1. Claimant also relies on SSR 85-15, which concerns the use
of the Medical-Vocational Guidelines for solely nonexertional
limitations, for the argument that for unskilled, sedentary
 
work, claimant must be able to use her hands for fine
manipulations such as picking, pinching, grasping, holding
and turning. We only note that the ALJ described claimant's
past work as semi-skilled in nature, a finding she does not
 
dispute. In any event, the two RFC forms stated that
claimant had no limits in performing fine manipulations.
 Similarly, Sec. 201.00(h) of Pt. 404, Subpt. P, App. 2
(the Medical-Vocational Guidelines) which states that an
injury resulting in the inability to perform jobs requiring
bilateral manual dexterity would support a finding of
disabled is inapposite. Subsection (h) is an example
concerning an individual under 45 years of age who is
restricted to unskilled sedentary work.
 

 -7-

the affected major joints in terms of . . . loss of strength

of hand function (grasp, grip, pinch)." Nor did Dr. Gonzalez

complete the range of motion chart or the periods of

exacerbation table as requested. Finally, Dr. Gonzalez did

not list carpal tunnel syndrome under the heading
 

"diagnosis".

 Indeed, the only physician to so diagnose

claimant's problems with her hands was Dr. Luis Olivari, the

doctor to whom the Secretary referred claimant for a

consultative examination. He noted that claimant had a weak

left hand grip and related the weakness to carpal tunnel

syndrome. However, he noted that her hand condition "might

improve with adequate treatment."

 The Social Security regulations require claimant to

submit medical reports which include "[a] statement about

what you can still do despite your impairment(s). . . . " 20

C.F.R. 404.1513(b)(6). This statement must refer to a

claimant's ability to handle objects. Id. 404.1513(c)(1).
 

Further, the medical evidence should be complete enough to

enable the Secretary to determine a claimant's "residual

functional capacity to do work-related . . . activities."

Id. 404.1513(d)(3). None of the medical evidence submitted
 

by claimant contains this information.

 In the absence of any such evidence, the ALJ was

entitled to rely on the RFC forms which both indicated that

 -8-

claimant had no limitation in using her fingers for fine

manipulation. The only limit noted in both forms was in

using the hands for gross manipulations. Further, the

examining physician found normal wrist motion and, besides

the left hand weakness, did not mention any other

manipulative difficulties that would indicate that claimant

did not retain the "good use of the hands and fingers"

required for most sedentary work. See SSR 83-14. Although
 

we have pointed out in the past, and now point out again,

that the Secretary should have the examining consultant

complete an RFC evaluation, see Rivera-Torres v. Secretary of
 

Health and Human Services, 837 F.2d 4, 6 (1st Cir. 1988) (per
 

curiam), we find that there was sufficient evidence in the

record to support the ALJ's conclusion.2 

 2. Claimant argues that two C.T. scans -- one in

July 1990 and one in October 1990 -- establish her inability

to work due to her back and foot conditions. The July 1990

C.T. scan showed a narrowing of the disc spaces at L4-L5 and

L5-S1; the disc at L5-S1 was bulging. In addition, the scan

showed mild osteoarthritis changes of the L5-S1 and right L4-

L5 facet joints. The October 1990 C.T. scan report stated

that claimant suffered from severe degenerative joint disease

 

2. We also note in this context that there is no evidence
that claimant ever sought treatment for the problems with her
hands, another basis for upholding the ALJ's decision. See
 
Tsarelka v. Secretary of Health and Human Services, 842 F.2d
 
529, 534 (1st Cir. 1988) (per curiam).

 -9-

in her left great toe with spur formation and sclerotic

changes. Claimant points out that the nonexamining

physicians who completed the RFC assessments and the

consultant who examined claimant in December 1989 did not

have the benefit of these "objective" medical data. As a

result, she argues, a medical advisor was required to

interpret them because the ALJ, a lay person, may not

translate such data into functional terms. See Berrios v.
 

Secretary of Health and Human Services, 796 F.2d 574, 576
 

(1st Cir. 1986) (per curiam).

 We reject this argument. First, one of the

nonexamining physicians completed his RFC assessment on May

21, 1990. At this time, the medical questionnaire, completed

by Dr. Irizarry on May 8, 1990, was in the file. In

answering this questionnaire, Dr. Irizarry refers to a C.T.

scan of March 9, 19903 which showed essentially the same

condition as the July scan -- degenerative disc disease at

L4-L5-S1, osteoarthritis of the posterior facet joints and a

narrowing of the spinal canal at L5-S1. Also on file at this

time was an earlier questionnaire completed by Dr. Irizarry

in November 1989. Although mostly illegible, it appears that

claimant's diagnoses at this time were cervical

osteoarthritis and cervical fibromyositis.

 

3. Claimant failed to include a copy of the report of the
March 1990 C.T. scan in the record.

 -10-

 Second, both nonexamining physicians had the report

of Dr. Olivari, the Secretary's consultant. Although, as

claimant points out, Dr. Olivari's examination occurred seven

months prior to the July 1990 C.T. scan, it nonetheless could

serve as a basis for the RFC assessments. First, it appears

from the State Insurance Fund (SIF) progress notes that

claimant's present back condition is related to an injury she

sustained in 1980. Second, claimant alleged that she had to
 

stop work in 1988 due to her back condition. As there is no

indication that claimant's symptoms worsened between 1988 and

July 1990 when the C.T. scan was performed, Dr. Olivari's

observations in 1989 are pertinent. This examination of

claimant revealed full range of motion of claimant's spine.

There was mild difficulty in kneeling and some left trapezius

spasm. However, there were no motor or sensory deficits and

no inflammation of the major joints; all deep reflexes were

normal. Dr. Olivari diagnosed degenerative joint disease

(which the C.T. scan confirmed) and painful left foot hallux

valgus.

 This is more than sufficient evidence on which to

base an RFC assessment.4 Turning to these assessments, both

 

4. Claimant argues that the physician who completed the RFC
assessment dated May 21, 1990, did not give a reasonable
explanation as to how he reached his conclusions. A review
of the RFC form belies this contention. Concerning her
exertional limitations, the physician indicates that he
relied on the following evidence: (1) complaints of cervical
and lumbar pain; (2) morning stiffness; (3) the March C.T.

 -11-

physicians determined that claimant could frequently lift and

carry weights up to twenty-five pounds and occasionally could

lift and carry objects weighing up to fifty pounds. Claimant

could sit, stand and walk up to six hours per activity. She

could occasionally stoop, kneel, crouch, balance and crawl.

Her ability to push and pull was unlimited up to the weights

for lifting and carrying.

 In this context, we note that Dr. Irizarry also

neglected to complete the range of motion charts and the

periods of exacerbation tables. This information is directly

related to residual functional capacity and it is claimant's

burden at step four of the sequential evaluation process to

produce such evidence. See Goodermote, 690 F.2d at 7; see
 

also 20 C.F.R. 404.1513. Although there is a conflict
 

between the RFC assessments and claimant's testimony as to

her limits, such conflicts are for the Secretary. See
 

Rodriguez, 647 F.2d at 222. We therefore cannot fault the
 

determination that claimant could perform the full range of

light and sedentary work.

 3. "[C]omplaints of pain need not be precisely

corroborated by objective findings, but they must be

consistent with medical findings." Dupuis v. Secretary of
 

Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989)
 

 

scan which revealed degenerative disc disease at L4-L5-S1;
(4) vertebral muscle spasm; and (5) vertigo.

 -12-

(per curiam). In reviewing such complaints, the ALJ's

credibility determination is entitled to deference where

there are specific findings to support it. See Frustaglia,
 

829 F.2d at 195. Here, the RFC assessments of the two

nonexamining physicians who reviewed the record both

indicated that claimant's conditions did not prevent her from

engaging in sedentary or light work. This conclusion is

supported by Dr. Olivari's report indicating full range of

motion of claimant's head, shoulders, wrists, hips and spine.

 Although the results of the C.T. scans reflect the

kind of conditions that can be expected to produce pain,

claimant's own description of her daily activities, in

addition to the medical findings referred to above, do not

support the conclusion that her pain was as severe as

alleged. Claimant stated that she cleans her home regularly,

attends to her personal needs and drives a car. She takes

medication that alleviates her symptoms; one of her treating

physicians noted mild improvement and a 1988 progress note

from the S.I.F. indicates that claimant had no complaints.

Based on the foregoing, we agree with the ALJ's decision not

to credit claimant's allegations of totally disabling pain.

 Affirmed.
 

 -13-