USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1028 JOSE R. FIGUEROA ALVAREZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ ____________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for ______________________ _________________________ appellant. Guillermo Gil, United States Attorney, Maria Hortensia Rios, ______________ _____________________ Assistant United States Attorney, and Donna McCarthy, Assistant _______________ Regional Counsel, Department of Health & Human Services, on brief for appellee.  ____________________ August 2, 1995 ____________________ Per Curiam. In 1990, Jose Figueroa Alvarez filed __________ an application for Social Security disability benefits, alleging disability due to lower back pain. After a hearing, the administrative law judge (ALJ) denied Figueroa's claim, concluding that he could perform his past relevant work as a security guard, and the Appeals Council denied review. Figueroa then appealed to the district court, which affirmed the decision. He now seeks review in this court. Because Figueroa's specific objections on appeal are meritless, and because our review of the record shows that substantial evidence supports the finding that Figueroa was not disabled, we affirm.  In his decision, the ALJ determined that the medical evidence of record showed that Figueroa has a severe musculoskeletal condition, but not one meeting or equalling the conditions listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, a CT scan showed lumbar spine spondylolysis and spondylolisthesis at the L4-L5 level and posterior bulging with small central disc herniation and compression of the dural sac at that level. The ALJ found that Figueroa's back condition was compatible with episodic pain, but concluded that the evidence did not establish a medically determinable basis for the degree of pain alleged. He also found that Figueroa's back condition had not limited his neurological or orthopedic functioning since Figueroa had always exhibited -2- good range of motion and no muscle weakness. Nonetheless, the ALJ determined that Figueroa could no longer perform his prior medium exertional level job as warehouseman and/or fingerlift operator. Because he found that Figueroa could still perform light work, however, the ALJ concluded that he could perform his past relevant work as a security guard, a job Figueroa had held from 1983-86 and again in 1990. DISCUSSION __________ On appeal, Figueroa claims that the ALJ failed to consider his allegations of disabling pain, erred in concluding that he could return to his past work as a security guard, and denied him disability benefits without considering evidence in his favor.  A. Allegations of Disabling Pain _____________________________ In support of his claim that the ALJ failed to consider his allegations of disabling pain, Figueroa states first that he constantly and persistently complained to examining physicians of severe disabling pain. He suggests that the ALJ ignored that evidence. The record does not substantiate his claim. First, there are significant gaps in Figueroa's medical records between December 1988, when he first injured his back, and October 1991, when the hearing took place. We have found no medical records indicating that Figueroa complained of pain to examining physicians for the periods -3- from May 1989 to December 1989, February 1990 to June 1990, or March 1991 to October 1991.1  Second, as the transcript shows, at the hearing the ALJ elicited Figueroa's testimony on relevant aspects of the pain he alleged, as required under Avery v. Secretary of _____ _____________ Health and Human Services, 797 F.2d 19, 29 (1st Cir. 1986).2 __________________________ In his decision, the ALJ took account of that testimony and stated that Figueroa's "salient complaint" was pain and decreased sensation in his right leg. In view of the medical evidence, however, the ALJ did not fully credit Figueroa's allegations of pain. He noted the gaps in Figueroa's medical treatment history, including the fact that he had not sought  ____________________ 1. The record contains an August 1989 report of the Puerto Rico Industrial Commission in which the Commission reported that Figueroa alleged pain in his lower right back and right hip. Apparently, because of Figueroa's allegation of pain, the Commission overturned the State Insurance Fund's May 1989 discharge of Figueroa as "cured and without disability." In February or March 1991, the State Insurance Fund determined, under the applicable worker's compensation law, that in December 1988 Figueroa had sustained a partial permanent disability of 15 % of his "general physiological functions." Although disability determinations by other agencies may be considered by the Secretary, they are not binding. See ___ Mandrell v. Weinberger, 511 F.2d 1102, 1103 (10th Cir. 1975) ________ __________ (Veterans' Administration disability determination is entitled to consideration, but is not binding on the Secretary). 2. Under Avery, the ALJ was required to inquire into the _____ nature, location, onset, duration, frequency, radiation, and intensity of the pain in question; the factors that precipitated or aggravated the pain; the type, dosage, effectiveness, and adverse side effects of pain medication; treatment for the pain other than medication; and the claimant's functional restrictions and daily activities.  -4- any treatment after February 1991. He concluded that, while Figueroa's back condition could cause pain on an episodic basis, the pain had proven treatable and had not limited his functioning significantly, except to the extent that he could not perform medium or heavy work.  Besides the gaps in Figueroa's medical record, other evidence supports the ALJ's conclusion. Although Figueroa testified that his pain was constant and strong, he also said that medication "alleviate[d]" the pain and that massaging his leg alleviated painful cramping during the night. He testified that his medication gave him heartburn, and for that reason it had been changed; his current medication allegedly had side effects, too, but Figueroa gave no specifics and acknowledged that he took it anyway because it "at least relieve[s] the pain a little."3 The ALJ noted that Figueroa appeared in no distress at the hearing and that he walked adequately with no assistive device. Figueroa also testified that he could walk for 30 meters, that one of his daily activities was walking around his yard, and that he walked around the house when leg pain woke him up at night. A consulting neurologist reported in January 1991 that Figueroa had back pain syndrome, but that he could do tip toe  ____________________ 3. In his decision, the ALJ stated that Figueroa's pills caused numbness, but we found nothing in the hearing transcript to support that statement, and so assume that it was inadvertent error. -5- gait, walk on his heels and squat on his knees; that his forward lumbar flexion was 80 degrees forward and his lateral lumbar flexion was 20 degrees;4 that his Lasegue was negative5 and his straight leg raising was 90 degrees; that he had no motor weakness and no muscle atrophy although he had minimal paravertebral muscle spasm; and that there was decreased sensation in his right leg without any anatomical distribution. In February and June 1991, Social Security physicians reviewed Figueroa's medical records and assessed his residual functional capacity (RFC).6 Each indicated that, despite his back condition, Figueroa could perform the exertional requirements of light work: he could occasionally lift or carry 20 pounds and frequently lift or carry 10  ____________________ 4. Accompanying range of motion charts show that full lumbar flexion forward is 90 degrees and that full lateral lumbar flexion is 20 degrees.  5. This apparently means that Figueroa suffered no pain or limitation of movement when raising his legs while in a supine position. See Blakiston's Gould Medical Dictionary ___ ______________________________________ 743 (4th ed. 1979) (Lasegue's sign becomes positive when a supine patient raises his entire lower extremity with his knees in full extension and suffers pain or muscle spasm resulting in limitation of movement at a particular angle of elevation). 6. Among other things, the medical opinion request form underlying the February RFC assessment noted Figueroa's claim of pain, his minimal paravertebral muscle spasm, decreased sensory sensation in his right leg without anatomical distribution, and his original back injury and CT scan results. The medical opinion request form underlying the June RFC assessment noted, among other things, his back condition, decreased sensation in his right leg, and minimal paravertebral muscle spasm. -6- pounds; he could stand, walk and sit with normal breaks each for a total of about 6 hours in an 8-hour workday; and he could push or pull without limit. See 20 C.F.R. 404.1567 ___ (the physical exertional requirements of light work comprise the ability to lift no more than 20 pounds at a time while frequently lifting or carrying objects up to 10 pounds, to walk or stand a good deal, or to perform some pushing and pulling of arm or leg controls if the job mostly required sitting); SSR 83-10 ("[T]he full range of light work involves standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."). Figueroa has not submitted any physician's evaluation or other medical report which contradicts the neurologist's assessment of his condition as of January 1991, nor any residual functional capacity evaluation which contradicts the two RFC assessments indicating that he could perform light work.  B. Past Relevant Work __________________ Figueroa objects to the ALJ's conclusion that he could perform his past relevant work of security guard, which is classified as light exertional work. See U.S. Dep't of ___ Labor, Dictionary of Occupational Titles (DOT) 269 (4th rev. __________________________________ ___ ed. 1991). In support thereof, Figueroa cites the postural limitations described in the Secretary's RFC assessments. Both assessments indicated that, given his back condition, -7- Figueroa could only occasionally climb stairs, stoop, crouch and crawl.7 Figueroa argues that the ALJ, as a layman, could not evaluate how his postural limitations would affect his ability to perform the work of a security guard, suggesting that the ALJ needed the guidance of a vocational expert.  We disagree. Figueroa bore the burden of showing that he could no longer perform his former job. In order to meet that burden, he needed to provide "some minimal information about the activities that [his] past usual work required[.]" Santiago v. Secretary of Health and Human ________ ________________________________ Services, 944 F.2d 1, 5 (1st Cir. 1991); accord Dudley v. ________ ______ ______ Secretary of Health and Human Services, 816 F.2d 792, 794 ________________________________________ (1st Cir. 1987) (per curiam). But Figueroa never testified that his prior work as security guard required any climbing, stooping, crouching and crawling, let alone doing so more than occasionally, nor does anything we have found in the record suggest that this is true. Thus, there was no evidence before the ALJ to show that Figueroa could not perform his past job as a security guard because of his postural limitations. Nor are climbing, stooping, crouching and crawling listed as physical requirements of the security guard job in the relevant vocational publication. See U.S. ___  ____________________ 7. The RFC assessment forms define "occasionally" to mean "occurring from very little up to one-third of an 8-hour workday (cumulative, not continuous)." -8- Dep't of Labor, Selected Characteristics of Occupations __________________________________________ Defined in the Revised Dictionary of Occupational Titles _____________________________________________________________ (SCO) Pt. A, at 45; App. C, at C-3 (1993) (the physical ___ demand components of climbing, stooping, crouching and crawling are "not present" in the security guard job);8 see ___ also SSR 83-14 (stating that relatively few jobs in the ____ national economy require climbing and that workers performing light exertional jobs would not have to crouch and would have to stoop only occasionally to perform substantially all the exertional requirements of most light jobs). Since Figueroa never met his burden of showing that his postural limitations prevented him from returning to his past work as security guard, and the SCO indicates that his postural limitations ___ would not prevent him from performing the security guard job as usually performed in the national economy, the ALJ had no obligation to consult a vocational expert. See Musgrave v. ___ ________ Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (an ALJ has no ________ obligation to seek vocational expert testimony where a claimant has not established a disability that prevents him from performing his past relevant work); see also SSR 82-61 ___ ____ (stating that vocational experts may be necessary in determining how a job is usually performed where the  ____________________ 8. The Secretary of Health and Human Services may rely on the general job categories in the DOT and SCO as ___ ___ presumptively applicable to a claimant's prior work. See ___ Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). _____ _______ -9- vocational resource materials are insufficient); compare Gray _______ ____ v. Heckler, 760 F.2d 369, 373 (1st Cir. 1985) (an ALJ may _______ rely on vocational publications in determining whether a claimant could return to past work where the claimant had the opportunity to, but did not, testify about the demands of her prior job).  Figueroa next suggests that the ALJ ignored significant evidence in determining that he could return to his work as a security guard. Figueroa points first to his testimony that he could not continue working as a security guard. At the hearing, Figueroa testified that he had to leave his security guard position in June 1990 after reinjuring his back. He also testified that he had tried to return to work recently, but that he had to quit after a month because he was required to stand all the time, making his leg and heel numb.9 Furthermore, Figueroa stated that  ____________________ 9. The record does not show conclusively that this job was a security guard position. Figueroa described his unsuccessful attempt to work again in response to the ALJ's question whether he had worked as a security guard elsewhere after June 1990, suggesting that the job was a security guard position. But, when the ALJ then concluded that Figueroa had worked as a security guard for five months in 1990, Figueroa's attorney presented a letter certifying only Figueroa's previous employment as a security guard for the four-month period from February to June 1990. The rest of the attorney's response is listed as "inaudible." In his decision, the ALJ reports that Figueroa alleged at the hearing that he worked as a security guard for only four months, but that in his written submissions to the agency he stated that he had also worked from 1983-86 as a security guard. This suggests that the ALJ's understanding was that Figueroa's unsuccessful one-month employment was not a -10- he could stand only for about 25-30 minutes, then he had to move his legs or stand on his toes. Figueroa also suggests that the ALJ ignored medical records from April 1989 and June 1990 which indicated that he had difficulty in standing.10 The fact that Figueroa had to leave his security guard job in June 1990 or that he complained of difficulty in standing in April 1989 and June 1990 is not very significant since the record indicates that his back condition improved afterwards and that it had not significantly affected his legs. In September 1990, a neurosurgeon reported that Figueroa's back pain did not radiate to his legs and that he had very infrequent cramps; he found that Figueroa had no  ____________________ security guard position. Figueroa's brief contains a confusing passage on this point, but seems intended to confirm the ALJ's understanding.  Even if the job in question were a security guard job, however, Figueroa's testimony at most showed that he could not return to a specific security guard job because it required him to stand continuously. He did not show that the typical security guard job entails standing for greater than six hours a day. Thus, even if his allegation that he could not stand for a prolonged period were fully credited, he still failed to show that his inability to stand for prolonged periods would prevent his returning to work as a security guard. See Pelletier v. Secretary of HEW, 525 F.2d ___ _________ ________________ 158, 160 (1st Cir. 1975) (a claimant did not meet her burden of proof by showing that a particular past job entailed exposure to smoke and fumes; she was required to show that such exposure would be a condition of her type of work generally).  10. The records stated that he complained of difficulty in sitting for prolonged periods of time, too, but Figueroa does not allege the ALJ erred by failing to consider his difficulty in sitting. -11- diminished sensation or edema in his legs and that he walked with a normal gait; his sensory and motor systems and reflexes were within normal limits; his heel to toe walking was excellent; there was no objective radiculopathy.11 By December 1990, a State Insurance Fund physician advised him that he could return to work. In January 1991, Figueroa told the consulting neurologist that he had difficulty sitting, _______ but he did not complain about difficulty in standing for prolonged periods. Although the neurologist found that Figueroa had decreased sensation in his right leg, he also found that Figueroa had no motor weakness and no muscle atrophy. The uncontradicted February and June 1991 RFC assessments both indicated that Figueroa could stand or walk for six hours out of an eight-hour workday.12 Figueroa never sought any treatment for numbness in his legs in 1991. At the hearing, Figueroa appeared to attribute the numbness in his legs to the pain he suffered, but, as noted earlier, he also said that his medications and hand massaging alleviated the pain. In addition, he suggested that moving his legs or standing on his toes helped relieve discomfort caused by prolonged standing. Under the circumstances, the  ____________________ 11. Radiculopathy is defined as "disease of the nerve roots." See Dorland's Illustrated Medical Dictionary 1405 ___ _________________________________________ (27th ed. 1988). 12. Neither physician marked the box on the RFC form which indicated that Figueroa should alternate periodically his sitting and standing in order to relieve pain or discomfort. -12- ALJ's apparent failure fully to credit Figueroa's allegation that he could not stand for prolonged periods of time was supported by substantial evidence in the record.13 C. Failure to Consider Whole Record ________________________________ Figueroa claims that the ALJ relied exclusively on evidence favorable to the Secretary and disregarded "overwhelming evidence" in the record which established his disability. As our discussion above shows, however, substantial evidence in the record supported the ALJ's decision. Two uncontradicted RFC assessments indicated that Figueroa could perform light work that entailed standing or walking for six hours out of an eight-hour workday. Some six months after Figueroa had reinjured his back in June 1990, a State Insurance Fund physician found that he could return to work. There was no evidence that Figueroa sought any treatment for pain or numbness after February 1991, and there was evidence that he was able to relieve the discomfort occasioned by his back condition. Affirmed.  _________  ____________________ 13. Figueroa also states that "another telling fact" is the fact that he wears an orthopedic girdle, but he does not develop that argument and so we do not consider it further. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), ___ _____________ _______ cert. denied, 494 U.S. 1082 (1990).  ____________ -13-