Elaine GRAY, Plaintiff, Appellant,

v.

Margaret HECKLER, Secretary of
Health and Human Services,
Defendant, Appellee.

No. 84–1717.

United States Court of Appeals,
First Circuit.

Submitted Jan. 10, 1985.

Decided April 30, 1985.

Raymond J. Kelly and Kelly & Duddy, P.A., Manchester, N.H., on brief for plaintiff, appellant.

Bruce E. Kenna, Asst. U.S. Atty., and W. Stephen Thayer, III, U.S. Atty., Concord, N.H., on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

PER CURIAM.

Elaine Gray appeals a judgment of the district court affirming a decision by the Secretary of Health and Human Services (Secretary) that Gray is not entitled to disability benefits under the Social Security Act. Gray argues that the Secretary's findings are not supported by substantial evidence. We affirm.

Gray first applied for disability benefits in 1981, alleging a disability onset date of March 13, 1979. In her application for benefits, Gray claimed that her disability was a loss of use of her left arm, and pain and immobility.

After a hearing, the administrative law judge (ALJ) found that Gray had impairments that significantly affected her ability to perform certain work-related functions. However, the ALJ concluded that Gray was not disabled because her impairments did not prevent her from performing her past relevant work. The Appeals Council denied review of the ALJ's decision, thus making that decision the final decision of the Secretary.

It is well settled that a claimant seeking disability benefits has the initial burden of proving that her impairments prevent her from performing her former type of work. *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 7 (1st Cir. 1982); *Pelletier v. Secretary of Health, Education and Welfare*, 525 F.2d 158, 160 (1st Cir.1975). In determining whether Gray could perform her prior type of work, the ALJ referred to a vocational report in which Gray listed her previous employment as: school bus driver (her most recent work and work of longest duration), census taker, switchboard operator, child care worker, typist, office worker, and sales clerk. In the report, Gray described her duties at every job except census taker, typist, and sales clerk. Gray also testified at the hearing to her duties as school bus driver, census taker and switchboard operator.

The ALJ concluded that Gray's impairments would prevent her from performing her prior jobs except for her former job as a sales clerk. In reaching this conclusion,

the ALJ relied solely on the description of a sales clerk position contained in the *Dictionary of Occupational Titles* and the *Selected Characteristics of Occupations* published by the United States Department of Labor.

Gray contends that the ALJ committed reversible error by finding that she has the residual functional capacity to do work last performed over ten years ago.[1] Gray argues that where a claimant demonstrates that she generally has performed work that is now beyond her capacity, she has satisfied her burden of proving inability to perform prior work even though she performed work several years ago that is within her present capacity.[2]

■ The ALJ's reliance on a job Gray performed more than ten years ago, rather than on her more recent jobs, does not necessarily constitute error. The regulations that specifically address assessment of a claimant's ability to perform prior work do not, by their terms, preclude reference to prior jobs merely because they were performed several years ago. *See* 20 C.F.R. §§ 404.1520(e), 404.1561. In addition, even if, as the Secretary states, the fifteen year period in 20 C.F.R. § 404.-1565(a)[3] limits what jobs can be considered as one's prior type of work, the record indicates that Gray's prior job as a sales clerk was within that period.

■ Under 20 C.F.R. § 404.1520(e), a claimant will not be considered disabled

---

1. To determine whether a claimant can perform prior jobs, the regulations require the ALJ to evaluate the claimant's "residual functional capacity." *See* 20 C.F.R. §§ 404.1520(e), 404.1561. This designates the claimant's ability to work despite physical or mental limitations. *See* 20 C.F.R. § 404.1545.

2. Gray cites *Carter v. Heckler*, 712 F.2d 137 (5th Cir.1983) to support her contention. In *Carter*, an ALJ determined that the claimant was not disabled because he could perform two of several jobs that he previously had performed. The court of appeals stated that although it agreed that claimant could perform one of his former jobs, that was insufficient to support the ALJ's determination. The court noted that the claimant had performed that job several years ago

and had since done dissimilar work which, according to the evidence, was currently beyond his exertional capacity. Here, however, Gray's job as a sales clerk, which she did for a significant period of time relative to her other prior work, is not so dissimilar from her other jobs that it could not reasonably be considered "prior work."

3. Section 404.1565(a) concerns a claimant's work experience, which is one of the vocational factors the Secretary considers in determining whether a claimant can do work other than her prior type of work. *See* 20 C.F.R. § 404.1561. Under § 404.1565(a), the Secretary does not usually consider work a claimant did more than fifteen years before the disability determination.

unless her impairment prevents her from "... doing past relevant work." That provision also states, "... we then review ... the work you have done in the past..." In 20 C.F.R. § 404.1561, "previous work" is referred to as "... your usual work or other applicable past work ..." Thus, the relevant regulations indicate that prior work includes not only one's usual work, but also her other relevant, applicable past work.

■ Even if Gray's prior job as a sales clerk could not be considered her "usual work", we believe it constitutes other relevant, applicable past work. The record indicates that Gray worked as a sales clerk for two years, which appears to be longer than any of her other prior jobs except for her job as a school bus driver. In addition, the sales clerk job is of a type consistent with other types of jobs she has performed. We therefore conclude that the ALJ properly considered Gray's prior work as a sales clerk in making his determination.

■ Gray also appears to question the ALJ's ability to conclude that she could return to her prior work by referring to the vocational publications instead of by eliciting testimony concerning her particular duties as a sales clerk. However, a claimant does not make a prima facie showing of disability merely by establishing that she cannot return to a particular prior job. Rather, the claimant must establish an inability to return to her former *type* of work. *Pelletier*, 525 F.2d at 160. Thus, the fact that the ALJ did not elicit specific testimony concerning Gray's particular job as a sales clerk does not render his decision invalid. The relevant consideration, which the ALJ properly focused on, was the requirements of that *type* of work. Because Gray's duties as a sales clerk are relevant to a consideration of whether she could perform her prior type of work, it would have been preferrable had the ALJ elicited such testimony. However, it is the claim-

ant, not the Secretary (or ALJ), who has the burden of proving inability to perform her former type of work. That burden necessarily includes an obligation to produce evidence on that issue. *See Pelletier*, 525 F.2d at 161; *Pitchard v. Schweiker*, 692 F.2d 198, 201 n. 2 (1st Cir.1982). Gray had the opportunity to present evidence relating to the demands of her job as a sales clerk but did not do so.

■ Under these circumstances, we do not believe that the ALJ erred in referring to the vocational publications.[4] The descriptions of job categories in the *Dictionary of Occupational Titles* provide relevant information concerning various types of work, including sales clerk positions.[5] The Fourth Circuit has held that the Secretary may rely on general job categories in the *Supplement to the Dictionary of Occupational Titles* as presumptively applicable to a claimant's prior work. *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir.1983). In *DeLoatche*, the court also held that the claimant could overcome the presumption that the Secretary's generalization applies by demonstrating that her duties were not those envisioned by the framers of the categories listed in the publication. *See* 715 F.2d at 151. Here, however, Gray presented no evidence indicating that the description of a sales clerk position that the ALJ relied on is inconsistent with her former type of work as a sales clerk.

Gray also argues that the ALJ's finding that Gray has the residual functional capacity to perform functions related to her prior type of work is not supported by substantial evidence. We disagree.

■ Dr. Nault assessed Gray's residual functional capacity, and indicated that Gray was capable of standing or walking for eight hours without more than normally expected breaks. Dr. Nault also concluded that Gray could stoop, kneel and crouch, and could perform light work involving fre-

---

4. We also find no merit to Gray's argument that the ALJ was required to have a vocational expert testify.

5. We note that the regulations authorize an ALJ to take administrative notice of job information contained in the *Dictionary of Occupational Titles*. 20 C.F.R. § 404.1566(d)(1).

quent lifting of a maximum of up to 10 pounds. He stated that Gray has restricted delicate movements of her left arm and hand, but that she is "... grossly able to do light work", and that she has limited use of her left arm. Although Dr. Nault is a consulting physician, opinions of consulting physicians concerning a claimant's physical condition are entitled to weight. *See Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 223 (1st Cir.1981).

The reports of the physicians who treated and/or examined Gray are generally inconclusive, but do not necessarily contradict Dr. Nault's reports. Dr. Gold found no obvious limitation in Gray's shoulder movements and only minimal tenderness in her left trapezius. However, both Dr. Gold and Dr. Elkurd suggest that Gray may have thoracic outlet syndrome, which involves pain in the arm, sensations (i.e., burning or prickling) in the fingers, and hand weakness.[6] This is consistent with Dr. Nault's conclusion that Gray has restricted movements and control of her left arm and hand. Dr. Davila's reports indicate Gray has bronchial asthma, and pain and spasm of the neck muscles. Her reports of some swelling and pain in Gray's left arm and shoulder, and left arm weakness, also are consistent with Dr. Nault's conclusion concerning limited use of Gray's left arm and hand.

Dr. Elkurd indicated that Gray could not sustain elevation of her left arm for as long as her right arm. Although Dr. Elkurd suspected a "neurological component", Dr. Niles reported "... no evidence of slowing across the Thoracic outlet or evidence of denervation at present." Similarly, Dr. Botsford reported a normal EMG, and Dr. Wanger could find no sign of neurologic disease.

Dr. Botsford reported that Gray's left arm demonstrated tinels signs, which are

"... tingling sensation in the distal end of a limb ..."[7] He also indicated that a carpal tunnel syndrome might be present, which involves pain and burning or tingling sensations in the fingers and hand.[8] A subsequent diagnosis indicated possible tenosynovitis (inflammation of a tendon sheath) of the wrist and pronator teres. Thus, there is medical evidence in the treating and examining physicians' reports consistent with the evidence in Dr. Nault's reports that Gray is restricted in her left hand and arm movements but can still use her left hand and arm.

Based on the evidence, the ALJ found that Gray had an asmathic condition. The ALJ also found that Gray retains the use of both arms but is limited in the length of time during which she is able to do so because of the impairment in her left arm and hand.[9] In addition, the ALJ found that Gray's ability to lift objects with both hands is less than normal, but that she frequently could lift objects up to ten pounds because of the lack of any impairment in her right arm and hand. These findings are supported by evidence in Dr. Nault's reports and by Gray's testimony. Gray testified that she is able to grip with her left hand, "... but not for any length of time." Gray also testified that she drives a car, although only when she has to; that she knits and crochets "... quite a bit ..." and tries "to work both hands ...", although she also testified that she knits and crochets for only 15 minutes at a time; that after breakfast she tries to clean up the dishes and do "... a few things around the house ..."

In addition, there are reasonable inferences that may be drawn from the medical evidence in the treating and examining physicians' reports to support the ALJ's findings. Although Dr. Gold stated that Gray appeared to be "... disabled from most

---

**6.** *See Dorland's Illustrated Medical Dictionary* (1974) at 1527.

**7.** *Dorland's Illustrated Medical Dictionary* (1974) at 1420.

**8.** *See Dorland's Illustrated Medical Dictionary* (1974) at 1517.

**9.** It should be noted that Gray does not allege that her right arm, hand or shoulder are impaired in any way.

activities involving use of any sort of the left arm", that conclusion is not binding on the Secretary. *See* 20 C.F.R. § 404.1527.

■ The ALJ then examined the general duties of a sales clerk position, related those duties to Gray's impairments, and concluded that she could perform that type of work. As the ALJ noted, the type of work involved in a sales clerk job would not necessarily involve continual use of both arms and hands for long periods of time, or frequent heavy lifting. Nor would it necessarily involve exposure to substances that might aggravate Gray's asthmatic condition. Although the medical evidence and Gray's testimony indicate that Gray may not be able to perform every possible sales clerk job, there is substantial evidence to support the ALJ's conclusion that she could perform that *type* of work.

■ Gray argues that the ALJ did not give significant weight to her complaints of pain and muscle spasm in her neck. However, subjective symptoms must be evaluated with due consideration for credibility, motivation and medical evidence of impairment. *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir.1975) (per curiam).

■ Here, the ALJ considered Gray's complaints of pain but found that her testimony regarding her back and neck pain was neither substantiated by the medical evidence nor credible. Although Dr. Davila wrote that Gray has pain and muscle spasm in her neck, Dr. Botsford reported that a neck examination was "unremarkable" except for some tenderness. Dr. Wanger also found that Gray had full neck mobility. In addition, although Gray testified she had back pain, Dr. Scriven's report indicated a "normal C spine ...", and Dr. Wanger reported "... normal cervical spine x-rays...." Given the medical evidence and the ALJ's assessment of Gray's

credibility, we believe the ALJ properly considered these complaints.

Finally, Gray contends that the ALJ erred in not considering a non-exertional, psychological impairment. Gray refers to the statements of Dr. Durand, an examining psychiatrist, that Gray "... suffers chronically from a dysthymic reaction...", and "I trust Mrs. Gray to be totally disabled at the present time since the constant fear of her pain would interfere with functioning...." [10]

Gray did not allege any mental impairment in her application for disability benefits, nor did she testify to any such impairment at the hearing. The record indicates that the only definite diagnosis of a mental condition by a psychologist or psychiatrist is in Dr. Durand's report.[11] The ALJ discussed that report but neither specifically referred to it in his findings, nor related it to Gray's capabilities to perform her prior work.

■ There is no indication that psychological conditions such as dysthymic reaction or fear of pain are totally disabling. *See Alvarado*, 511 F.2d at 1049 ("The mere existance of a psychoneurosis or an anxiety reaction does not constitute a disability.") The fact that the ALJ did not make findings relating Dr. Durand's diagnosis of "dysthymic reaction" or Gray's fear of pain to the capabilities necessary to work at her prior work does not necessarily require a remand. In *Gonzalez Perez v. Secretary of Health, Education and Welfare*, 572 F.2d 886 (1st Cir.1978), we declined to remand even though there were no findings or analysis by the ALJ that related the claimant's psychological disorder to the capabilities necessary to perform her prior work. We stated:

"... a claimant must establish that he can no longer perform his prior vocation before the government is obligated to

---

10. In his report, Dr. Durand also stated, "The content of [Gray's] thought did not avail any thought disorder nor hallucination or delusion nor looseness of association... She is ... capable of handling abstract concepts ... judgment is excellent...."

11. The only other possible suggestion of some psychological component is in the report of Dr. Wanger, a neurologist. He reported that he could find no sign of neurologic disease, and stated, "I strongly suspect psychophysiologic factors triggering thoracic muscle spasm."

prove that alternative employment is available for a person in claimant's condition. It is not sufficient to assert some general, functional disability and then leave it to the government to present evidence as to the practical consequences of the disability in terms of the requirements of the claimant's prior work. That is the claimant's responsibility ..."

*Id.* at 888.

Here, except for Dr. Durand's general conclusion that Gray is "totally disabled", which is not binding on the Secretary,[12] Gray presented no evidence indicating that her dysthymic reaction or fear of pain, either alone or in combination with her impairments relating to her left arm and hand, or to her asthma, would prevent her from performing her prior work. It is the claimant's responsibility to present evidence concerning the practical consequences of a disability in terms of the requirements of the claimant's prior work. Gray did not satisfy that responsibility in this case.

The judgment of the district court is affirmed.