USCA1 Opinion

 

 May 31, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2092 LAURA E. LOPEZ-MERRERO, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ ____________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for ______________________ _________________________ appellant. Guillermo Gil, United States Attorney, Maria Hortensia Rios, ______________ ______________________ Assistant United States Attorney, and Paul Germanotta, Assistant ________________ Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Claimant Laura E. Lopez-Marrero ____________ appeals from the judgment of the district court which affirmed the decision of the Secretary of Health and Human Services that claimant was not entitled to Social Security disability benefits. I. BACKGROUND _ __________ Claimant filed an application for Social Security disability benefits on June 6, 1989. She alleged an onset date of October 15, 1988. As disabilities she listed her nerves and her back. She related her impairments to two falls at work. An administrative law judge (ALJ) held a hearing. Claimant testified concerning her most recent work. First, she worked in a pharmaceutical factory where she manually checked and counted the gloves made there. She would alternate between sitting and standing and only had to carry "little" things. Next, she was employed as an office worker; she took notes and answered the phone. Claimant stated that she lives with her husband. After the accidents, she suffered pain in her left leg, left hip, left ankle and right hand. She uses a cane because of the pain in her legs. She visits a doctor when in pain and takes Motrin. She can sit and stand for twenty minutes at a time but has problems walking. She can lift light objects. She would like to work but cannot because of the problems she has with her memory due to her nerves and because of the pain in her lower back, coccidial area and left hip. She described her pain as strong although sometimes the medicine helps. As for her nerves, she feels desperate and restless. The ALJ first determined that claimant's impairments did not meet the listings. Nonetheless, he found that there existed some limitations in her work-related activities due to both her exertional and non-exertional conditions. As for claimant's mental impairment, the ALJ concluded that claimant was only precluded from performing complex tasks due to some deterioration in her ability to sustain concentration. Nonetheless, she retained the capacity to perform simple tasks that were routine and repetitive in nature. He rejected the level of deterioration described by claimant, finding that, under Avery v. Secretary _____ _________ of Health and Human Services, 797 F.2d 19 (1st Cir. 1986), _____________________________ she was only somewhat limited in social functioning and daily activities. In relation to her neurological condition, the ALJ found that she suffered from lumbar strain and had a history of trauma to her left hip, left ankle and right hand. Under Avery, the ALJ credited claimant's complaints of pain only to _____ the extent that she was precluded from doing heavy lifting and carrying and from standing or walking for prolonged periods of time. Thus, he concluded, she could perform her past work. -3- On appeal, claimant argues that the ALJ's determinations regarding her pain were not substantially supported by the record. Further, claimant asserts, the ALJ erred by translating, without the aid of a vocational expert, the medical evidence of claimant's physical impairments into functional limitations on her ability to perform her past work. As for her mental condition, claimant asserts that the ALJ's decision was not supported by substantial evidence when viewed in the context of the record as a whole. Specifically, claimant points to the findings concerning restrictions in her ability to cope with the stresses of work in general. A. Physical Impairment ___________________ The x-ray reports, which found partial sacralization of the L-5 disc and narrowing of the L-5-S-1 disc space, do provide evidence of "a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." See Avery, 797 F.2d at 21. However, ___ _____ there also was evidence to support the ALJ's decision not to credit claimant's claims of totally disabling pain. For example, in November 1989, claimant underwent a neurological evaluation. See Exhibit 15. Although ___ claimant's complaints included constant pain, she had normal tone, no atrophy and a strength rating of 4 out of 5. There was no muscle spasm and no deformity. The diagnosis was -4- lumbar strain. At another examination in October 1990, see ___ Exhibit 22, claimant complained of mild lower back pain which was alleviated with Motrin. Despite the presence of some muscle spasm and a limited range of motion of the lumbar spine, there was no muscle weakness or atrophy and no sensory deficit; claimant's gait was normal. The diagnosis was a back condition by history, with no evidence of radiculapathy. Contrary to claimant's argument, the ALJ did not impermissibly translate medical data into functional limitations. Rather, the record contained two residual functional capacity (RFC) forms. In December 1989, a physician opined that, based on the medical records, claimant had no exertional, postural or other limitations. In a __ November 1990 RFC assessment, it was noted that claimant could occasionally lift and carry up to 50 pounds and could frequently lift and carry 25 pounds. She could stand, sit and walk for up to six hours each per day. B. Mental Condition ________________ Claimant's mental impairment presents a more complicated picture but, again, there is evidence to support the Secretary's position. A psychiatric examination conducted in November 1989, see Exhibit 16, revealed that ___ claimant was logical, coherent, relevant and oriented. She did not present any perceptual dysfunctions. Although she appeared anxious and depressed, her attention span was -5- conserved and her ability to concentrate was adequate. She was described as capable of judging reality and the consequences of her acts. In July 1990, claimant also was described as coherent, relevant, logical and cooperative; there were no observable thought disorders. See Exhibit 18. Her affect ___ was appropriate and her mood normal. She reported delusions, but the examiner described them as hysterical in nature. Her memory was conserved. In addition, claimant took the MMPI. The examiner described the results as "exaggerated." That is, claimant "reported symptoms of such severe disturbance that her profile fell outside the maximum limits that the profile was designed to measure." As a result, "[s]he would have been unlikely to be unable [sic] to take the test properly if she were as severely disturbed as she was claiming, and her behavior during the clinical part of the examination was in sharp contrast with her claims of disturbance." The diagnoses were mild dysthymia and a personality disorder with dependent and hysterical features. Three non-examining doctors completed mental RFC assessments. In December 1989, claimant was rated as not significantly limited in understanding, remembering and carrying out short, simple instructions. Also not significantly limited were her abilities to sustain an ordinary routine without supervision, to make simple work- -6- related decisions, to relate to co-workers, to maintain socially appropriate behavior and to handle changes in the work environment. As for maintaining concentration for extended periods of time, performing within a regular schedule, and being able to complete a normal work-week without interruptions from psychologically-based symptoms, claimant was moderately limited. She was not "markedly limited" in any areas. The conclusion was that claimant was capable of performing simple tasks on a sustained basis. The RFC assessment completed in August 1990 essentially reached the same results. Even with moderate limits on her abilities to complete a normal work-week, to respond appropriately to changes in the work setting, and to accept supervision, claimant retained the abilities to cope with simple instructions, to perform within a schedule, to make simple work-related decisions, to work in proximity to others, to sustain an ordinary work routine, to maintain regular attendance and to be punctual. The third physician, in November 1990, echoed the findings concerning claimant's capacity to deal with simple instructions, to work with others, to make simple, work-related decisions and to respond appropriately to criticism. She was moderately limited in dealing with the stresses of work in general -- being able to concentrate, maintaining a routine without supervision, -7- completing a normal work-week and keeping up regular attendance. In Social Security Ruling (SSR) 85-15, the Secretary set out the framework for addressing mental impairments in the context of unskilled work. See Ortiz v. ___ _____ Secretary of Health and Human Services, 890 F.2d 520, 526-27 ______________________________________ (1st Cir. 1989) (per curiam) (discussing SSR 85-15). Two sets of capabilities are necessary for this kind of work. First, claimant must be able to understand, remember and carry out simple instructions, to respond appropriately to co-workers, supervision and normal work situations, and to cope with routine changes in the work situation. There is substantial evidence, based on the above reports, that claimant meets these requirements. The second set of capabilities concerns the demands of any work environment, regardless of the skill level involved. To be able to accommodate a work setting per se, according to SSR 85-15, an individual must be capable of being punctual, attending work on a consistent basis and staying at work for the entire day. The RFC assessments uniformly rated claimant as "moderately limited" in these spheres of functioning. We have acknowledged that such limitations may erode the occupational base "at least marginally, and possibly more so." See Ortiz, 890 F.2d at ___ _____ -8- 527; see also Irlanda Ortiz v. Secretary of Health and Human ___ ____ _____________ _____________________________ Services, 955 F.2d 765, 770 (1st Cir. 1991) (per curiam). ________ In this case, we believe that there is substantial record evidence to support the Secretary's decision that claimant's dysthymia did not significantly affect her ability _____________ to successfully negotiate the work setting. In this regard, we note that objective medical evidence -- the MMPI -- indicates that claimant may be exaggerating her symptomology. III. CONCLUSION ___ __________ We conclude that claimant has not met her burden of establishing that her impairments precluded her from performing her past work. See Gray v. Heckler, 760 F.2d 369, ___ ____ _______ 371 (1st Cir. 1985) (per curiam). "We must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Secretary's] decision." Rodriguez _________ v. Secretary of Health and Human Services, 647 F.2d 218, 222 ______________________________________ (1st Cir. 1981). Although the record contains conflicting evidence, the resolution of these conflicts is for the Secretary, not the courts. See id. Given the medical ___ ___ reports described above, there was substantial evidence in the record as a whole to support the Secretary's conclusion. The judgment of the district court is affirmed. ________ -9-