Kalar v. SSA                    CV-95-330-B    05/16/96

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Janet M. Kalar

    v.                                    Civil No. 95-330-B

Shirley S. Chater, Commissioner
of Social Security


**O R D E R**

Janet Kalar appeals the Commissioner's decision denying her application for disability insurance benefits and asks that her case be remanded for further proceedings. She contends that the Administrative Law Judge ("ALJ") improperly determined that she could return to her former work and that new and material evidence exists which would change the outcome of her application. For the reasons that follow, I reverse the Commissioner's decision and remand for further proceedings.


**I. BACKGROUND**

Janet Kalar filed an application for disability insurance benefits on October 14, 1993, on the grounds that her asthma had prevented her from working since July 24, 1991. Her medical

records show that in addition to her chronic asthma, she has experienced a variety of other ailments requiring medical attention including carpal tunnel syndrome affecting both hands.

Kalar's medical records from a visit to Frisbie Memorial Hospital in January 1992 confirm her history of asthma and list her medications as Albuterol, Intal, and Azmacort. In November 1992, her treating physician, Paul Friedrichs, wrote that he had treated Kalar for asthma since early 1990 and that she required daily medications, including nebulized medication (medication administered through an atomizer). He stated that she takes medications three or four times per day and that the medication regime would add fifteen minutes to her preparation time before work each morning. Dr. Friedrichs examined Kalar in June 1993 due to complaints of swollen glands, and Kalar reported that her asthma was under good control. Similarly, when Dr. Friedrichs saw her in January 1994 for a chest cold and impetigo on her wrist, he determined that her asthma was stable.

Dr. Homer Lawrence reviewed Kalar's medical records and assessed the severity of her impairments for the Disability Determination Program in January 1994. He found that Kalar had no exertional or postural limitations that would restrict her work capacity but that her work environment could not include

2

fumes, odors, dust, gas, or poor ventilation. Dr. A. C. Campbell reviewed Kalar's records in March 1994 and determined that Kalar could lift and carry ten pounds frequently and twenty pounds occasionally, and that she could stand, walk or sit for about six hours in an eight hour day. He also included the environmental limitations identified by Dr. Lawrence. Dr. Campbell concluded that Kalar had a residual functional capacity ("RFC") for light work with the noted environmental limitations.

Kalar was treated in April and May 1994 at the Lahey Clinic for allergies. At that time, her chief complaints were asthma, aching muscles, swelling with hives, swollen glands, and headaches. She underwent a Pulmonary Function Test that was interpreted to indicate "mild obstructive disease cannot rule out restrictive disease." Her chest x-ray showed her lungs to be clear.

Kalar complained of numbness in her hands and feet, an aching right shoulder, and difficulty in holding her arms up during her April 1994 neurology examination at the Lahey Clinic. Her neurological examination was normal, and the recorded impression was that she had symptoms without neurological findings. An electromyogram on May 16, 1994, revealed moderately severe bilateral carpal tunnel syndrome which causes burning or

3

tingling pain in the fingers and hands sometimes extending to the elbows.

Kalar was treated in June 1994 by Dr. David J. Bryan, a hand surgeon, for carpal tunnel syndrome. She reported numbness and tingling in both hands and all fingers for the past two years, intermittent bluish discoloration of her right hand in the past six months, and some swelling in her arms and legs. From the examination and the results of her previous testing, Dr. Bryan concluded that Kalar had bilateral carpal syndrome, right greater than left, that the pain in her arms was probably causalgia caused by an injury to the peripheral nerve. He recommended conservative treatment of her carpal tunnel syndrome and suggested a rheumatology consultation to address her complaints of hip and knee pain and general muscle soreness.

Dr. Bryan also completed a Medical Assessment of Ability to Do Work-Related Physical Activities Form limited to an evaluation of Kalar's hands. He showed no limits on her ability to lift or carry, but indicated that her handling and feeling ability in her right hand, more than her left hand, was affected by numbness and diminished sensation in her fingers caused by neuropathy of the median nerve. He noted that her impairment was worsened by temperature extremes and vibrations.

4

Following Dr. Bryan's advice, Kalar underwent a rheumatological evaluation in August 1994 by Dr. Jonathan Kay. At that time, she described pain in her right shoulder and muscle aches in her legs for the previous two years. Dr. Kay's impression following examination was that Kalar had tendinitis in her right biceps muscle and bilateral carpal tunnel syndrome but showed no evidence of rheumatic disease. Kalar saw Dr. Kay again in October 1994 due to a swelling under her chin. He was unable to make a specific diagnosis and scheduled a follow-up examination. Dr. Kay also completed a Medical Assessment of Ability To Do Work-Related Physical Activities Form dated November 14, 1994, and indicated no limitations on Kalar's physical abilities.

At the ALJ hearing on November 14, 1994, Kalar testified that she was forty-four years old, that she had completed three years of college, and that she had previously worked as an accounts payable clerk, a day care worker, a cashier, and an office manager/executive assistant. She indicated that she was terminated from her last employment because of her asthma and that she had looked for work but was not hired for the same reason. She explained that she used a nebulizer machine three to four times each day to push the asthma medication into her lungs

and that each use lasted ten to fifteen minutes.  She stated that she had asthma attacks once or twice each day and that things in the environment, such as chemicals, perfumes, and cigarette odors, bothered her.

Kalar also testified that she had problems with her arms which interfered with gripping things.  She explained that when she did bookkeeping, she constantly used calculators, adding machines, and computers, and that she could no longer perform the necessary fine manipulations with her hands.  She explained that her hands got tired too easily and developed "pins and needles" so that she had to shake them and rest to restore circulation.  She also stated that she had muscle and back problems and that her legs were useless for walking.

A vocational expert ("VE") also testified at the hearing.  The ALJ posed a hypothetical to the VE describing Kalar's age, education, and past work experience, and the exertional limitations indicated in the RFCs in the record and from Kalar's testimony.  Specifically, the hypothetical claimant was restricted from doing "fine-finger hand tasks."  The vocational expert testified that based on the limitations posed by the ALJ, the hypothetical claimant could return to work as an accounting clerk because the necessary keyboard work was repetitive but did

6

not require fine-fingered manipulation.  When the ALJ modified the hypothetical to preclude any work with keyboards, the VE testified that the hypothetical claimant could not work as an accounting clerk.  The ALJ then asked if there was other work that Kalar could do, and the VE testified that she could work as a surveillance monitor, a sedentary unskilled job, and that 52,987 of those positions existed in the national economy.

The ALJ issued his opinion on February 6, 1995, in which he determined that the medical evidence supported Kalar's impairments of lumbosacral strain, median neuropathy, bilateral carpal tunnel syndrome, bilateral biceps tendinitis, and asthma. He concluded, however, that her subjective complaints of pain and other restrictions were not credible and that she was not disabled from her past work as an accounting clerk by her limitations.  Therefore, he denied her benefits at the fourth step of the sequential analysis.

Kalar then appealed the ALJ's decision to the Appeals Council and submitted additional evidence.  The Appeals Council declined her request for review, and she then filed her appeal here.

## II. <u>**STANDARD OF REVIEW**</u>

After a final determination by the Commissioner and upon request by a party, this court is authorized to review the pleadings and the transcript of the record of the proceeding, and enter a judgment affirming, modifying, or reversing the decision. 42 U.S.C.A. § 405(g) (West Supp. 1995). The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence. <u>Id.</u>; <u>Irlanda Ortiz v. Secretary of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. <u>Id.</u> Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" <u>Id.</u> (quoting <u>Rodriguez v. Secretary of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981). However, if the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary. <u>Carroll v.</u>

8

<u>Secretary of Health & Human Servs.</u>, 705 F.2d 638, 644 (2d Cir. 1983). <u>See also</u> <u>Slessinger v. Secretary of Health & Human Servs.</u>, 835 F.2d 937, 939 (1st Cir. 1987). I review Kalar's appeal in light of the applicable standard.

## III. <u>DISCUSSION</u>

Kalar argues that the record does not include substantial evidence to support the ALJ's determination that she could return to her previous work as an accounting clerk. Because I conclude that remand is necessary on that ground, I do not address the two additional grounds Kalar raises for remanding her case.

The ALJ concluded at the fourth step of the five step disability determination analysis,[1] that Kalar was not disabled

---

[1] The ALJ is required to consider the following five steps when determining if a claimant is disabled:
    (1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
    (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
    (3) whether the impairment meets or equals a listed impairment;
    (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
    (5) whether the impairment prevents or prevented the claimant from doing any other work.
20 C.F.R. § 404.1520 (1994).

because she could return to her previous work as an accounting clerk. At Step Four, the ALJ must determine whether an impairment, or combination of impairments, prevents the claimant from performing her past relevant work. 20 C.F.R. § 404.1520(e). To make the determination, "the ALJ must compare the physical and mental demands of that past work with current functional capability." Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (citing 20 C.F.R. § 404.1560(b)). Thus, a decision that a claimant can return to her past work must be supported by factual findings concerning the claimant's RFC and the physical and mental demands of the claimant's previous work. Santiago v. Secretary of Health and Human Servs., 944 F.2d 1, 5 n.1 (1st Cir. 1991); see also SSR 82-62, 1982 WL 31386 *4.

The initial burden is on the claimant to make a "reasonable threshold showing that she cannot return to her former employment because of her alleged disability." Santiago, 944 F.2d at 5; accord Manso-Pizarro, 76 F.3d at 17. To carry her burden, the claimant must produce evidence of the physical and mental demands of her prior work and describe her limitations, indicating how her current functional capacity precludes her from performing her prior work. Santiago, 944 F.2d at 5. The ALJ may rely on the

claimant's own descriptions of her duties and her functional limitations. Id. If the claimant can still perform her past work, as she actually performed it when employed, she is not disabled. Id. If the ALJ finds that the claimant cannot perform her actual previous work, however, the claimant nevertheless is not disabled if she "retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387 *2; accord Santiago, 944 F.2d at 5 n.1; Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1985).

Kalar testified at the hearing that she could no longer do the fine hand manipulations necessary to use calculators, adding machines, and computers in her job as an accounting clerk. The VE testified that an accounting clerk job depended upon keyboard work with repetitive motion and fingering although the job did not require fine hand manipulations.[2] The ALJ found that Kalar's

---

[2] The parties dispute whether a VE's opinion is appropriate at Step Four. In the second part of the analysis, when the nature of the job as it exists in the national economy is at issue, the ALJ may rely on supplementary or corroborative information from a variety of sources including a VE. See SSR 82-62, 1982 WL 31386 *3; but see Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (ALJ not obligated to elicit opinion of VE to help claimant meet his burden of proof at Step Four); Smith v. Bowen, 837 F.2d 635, 637 (4th Cir. 1987) (improper to

RFC was limited by a variety of restrictions including that "she cannot perform repetitive reaching and <u>any handling, fingering or feeling</u>" (emphasis added). Nevertheless, the ALJ determined that although Kalar was disabled from returning to most of her previous work, she could work as an accounting clerk. The ALJ did not explain the conflict between his finding that Kalar could not do <u>any</u> fingering or handling and the record evidence that an accounting clerk position requires repetitive fingering and keyboard work, as the VE testified, or that Kalar's previous accounting job required fine hand manipulations, as she testified. Nor does the record contain any evidence that would support a finding that an accounting clerk position does not require fingering, fine hand manipulations, or use of a keyboard. Therefore, the ALJ's finding that Kalar could return to her job as an accounting clerk in spite of her inability to perform repetitive reaching, handling or fingering, is not supported by substantial evidence.

Because the ALJ's determination at Step Four is not supported by his factual findings or by substantial evidence in the record, the decision is reversed. Although the hearing

rely on vocational expert's opinion until a claimant is found unable to do her past relevant work).

12

record includes evidence pertaining to a Step Five evaluation, the ALJ did not make alternative findings to support a disability determination at Step Five. Accordingly, the case is remanded to the Commissioner for further proceedings at Step Four of the sequential analysis to determine whether Kalar is disabled from all previous work, and, if necessary, to proceed to Step Five.

## CONCLUSION

For the foregoing reasons, the claimant's motion to reverse (document no. 8) is granted, the government's motion to affirm (document no. 12) is denied, and the case is remanded to the Commissioner for further proceedings.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

May 16, 1996

cc:  Jeffrey A. Schapira, Esq.
     David L. Broderick, Esq.

13