**Esperanca R. MONTEIRO, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.**

**No. Civ.A. 00–40001–NMG.**

United States District Court,
D. Massachusetts.

March 27, 2001.

---

James N. Wittorff, Rosen, Noferi, Noferi, Wittorff, Graziano & Webber, Milford, MA, for Plaintiff.

Mary Elizabeth Carmody, U.S. Attys. Office, Worcester, MA, for Defendant.

### MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is an action to review a final decision of the defendant, the Commissioner of the Social Security Administration ("the Commissioner"), denying a Period of Disability and Social Security Disability Insurance Benefits to the plaintiff, Esperanca R. Monteiro

("Monteiro"), under § 205(g) of the Social Security Act ("the Act"). 42 U.S.C. § 405(g).[1]

## I. Procedural Background

On March 21, 1997, Monteiro applied for Social Security Disability Insurance Benefits, alleging that she was unable to work from March 1, 1993 to the date of the application due to back and arm problems. The Commissioner denied Monteiro's application initially and upon reconsideration.

On August 25, 1998, an Administrative Law Judge ("ALJ") held a hearing at which Monteiro, represented by counsel, testified. The ALJ considered the case and, on November 25, 1998, found that Monteiro was not disabled because she had the residual functional capacity ("RFC") to perform light work. On November 18, 1999, the Commissioner denied review, thereby rendering the ALJ's determination a final decision subject to judicial review. *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 25 (1st Cir. 1986).

On December 21, 1999, Monteiro filed a complaint seeking reversal of the Commissioner's decision and she has now moved for summary judgment (Docket No. 6). The Commissioner opposes that motion and, pursuant to 42 U.S.C. § 405(g), has moved this Court to affirm his decision (Docket No. 8).

## II. Factual Background

Monteiro was 48 years old when her insured status expired on December 31, 1996. She was born in Portugal in 1948 and attended school through the seventh grade. Her past relevant work experience includes employment as a packer, machine operator and order collector.

At the 1998 hearing, Monteiro testified that almost 13 years earlier, following an injury at her then current place of employment, she had an operation on her right hand and possibly her right wrist and arm, after which her right hand "was not the same". She also reported that she had injured her left hand about eight or nine years prior to the hearing date. She did not stop working, however, until 1993, and then only because she had been laid off. After her layoff, she received unemployment benefits for approximately six months. Monteiro further claimed that, as a result of an injury suffered in March of 1993 when she fell on some stairs, she can no longer work.

On March 1, 1993, Monteiro was examined at Milford–Whitinsville Regional Hospital for blunt trauma to her mid back, resulting from a fall on stairs. Evaluation of the back revealed mild paravertebral tenderness, without spasm. She was diagnosed with a back contusion and discharged in good condition.

On August 12, 1993, Monteiro was seen for the first time by Dr. Ahad Dilmaghani, an orthopedic surgeon. She complained of pain in her neck and right shoulder and numbness in her right thumb, all of which were unimproved since her fall despite chiropractic treatment. Examination revealed pain on extreme active range of motion ("ROM") of the cervical spine, mid-cervical region and right shoulder. Neu-

---

**1.** Monteiro improperly names the Secretary of Health and Human Services as the defendant in this case. The functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of the Social Security Administration, effective March 31, 1995, pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–29, § 105, 108 Stat. 1464, 1472 (1994). Kenneth S. Apfel was sworn in as Commissioner of the Social Security Administration on September 29, 1997, and is therefore the proper defendant.

rological examination revealed normal muscle power in both upper extremities. X-rays of the cervical spine revealed narrowing of the C4–C5 disc space with degenerative changes. Dr. Dilmaghani prescribed Naprosyn and Darvocet.

When Monteiro next saw Dr. Dilmaghani on September 14, 1993, she reported improvement of about 50%, with less pain in her neck and no arm pain. Neurological examination of the upper extremities for reflexes, sensation and muscle power was normal. On October 29, 1993, Monteiro had no arm pain and although she continued to have neck pain, it was listed as "somewhat improving". On January 6, 1994, examination revealed mild pain on ROM and moderate pain on extreme ROM of the cervical spine. It was observed that an MRI of May 3, 1993 was within normal limits. Monteiro's condition remained the same from February through April of 1994. X-rays of her lumbar spine, taken in May, 1994, revealed some narrowing of the L5–S1 disc space but no degenerative changes.

On June 20, 1994, Monteiro was again seen by Dr. Dilmaghani who noted that "[s]he continues to complain of neck pain and right should pain when she does not take medication." Examination revealed pain on extreme ROM of the cervical spine. Although she had mild pain in the right shoulder, there was no swelling of the right shoulder and she had full ROM. On December 8, 1994, Monteiro continued to complain of neck pain, with occasional radiation of pain to the right arm, but stated that she experienced relief with Daypro. At that time, Dr. Dilmaghani cautioned her to do no heavy lifting. On March 3, 1995, Monteiro reported that her muscle and neck pain had improved. Examination revealed mild pain on extreme ROM of the cervical spine.

She was not seen again until October 11, 1996, at which time she complained of neck pain and numbness in her right arm. Examination revealed pain on extreme ROM of the cervical spine. There was no paraspinal muscle atrophy and she had full ROM of the shoulders, elbows, wrists and hands. Neurological examination was normal for muscle power, sensation and reflexes. At her next examination on December 5, 1996, her condition was essentially unchanged. On February 6, 1997, she was still experiencing pain on extreme ROM of the cervical spine, but there was no paraspinal muscle atrophy. She had full ROM of the shoulders, elbows and wrists.

Dr. Dilmaghani last evaluated Monteiro on April 18, 1997. Examination revealed pain on extreme ROM of the cervical spine with no muscle spasm. She also experienced pain in the trapezius muscles around the shoulders, arms, wrists and hands. Neurological examination was normal for muscle power, sensation and reflexes. On September 23, 1998, Dr. Dilmaghani submitted a brief note to plaintiff's counsel in which he stated that Monteiro's orthopedic condition had not changed since January of 1996.

On October 29, 1997, Dr. Rosario Palmeri reviewed Dr. Dilmaghani's medical reports and prepared an assessment of Monteiro's residual functional capacity as a result of her impairment. Dr. Palmeri concluded that Monteiro could 1) lift and/or carry 10 pounds frequently and 20 pounds occasionally, 2) stand and/or walk for about 6 hours in an 8–hour workday, and 3) sit for about 6 hours in an 8–hour workday.

### III. *Analysis*

#### A. Standard of Review

Judicial review of a final decision by the Commissioner is limited by 42 U.S.C.

§ 405(g). The statute authorizes this Court to review the pleadings and the transcript of the record of the proceeding of a final determination by the Commissioner and to affirm, modify or reverse the decision, with or without remanding the cause for a rehearing. *Id.* The Commissioner's factual findings must be affirmed if they are supported by substantial evidence in the record. *Id; Irlanda Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1st Cir.1991).

 Even where the record can be construed to support another conclusion, the Commissioner's decision must be upheld if supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). The Commissioner, not this Court, must weigh the credibility of witnesses, draw inferences from the record, and resolve conflicts in the evidence. *Richardson v. Perales,* 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Irlanda Ortiz,* 955 F.2d at 769; *Evangelista v. Secretary of Health and Human Services,* 826 F.2d 136, 141 (1st Cir.1987). Accordingly, the issue before this Court is whether substantial evidence in the record supports the Commissioner's final decision denying Monteiro's claim for benefits.

## B. Disability Determination

The Act defines disability as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). The Act further provides that

(2)(A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

(3) ... a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques....

(5) An individual shall not be considered under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

42 U.S.C. § 423(d).

 The plaintiff bears the burden of proving that he is disabled under the Act and is entitled to benefits. *Bowen v. Yuckert,* 482 U.S. 137, 146–7 & n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Deblois v. Secretary of Health and Human Services,* 686 F.2d 76, 79 (1st Cir.1982). Under the Act, a person suffers from a disability if unable to engage in any substantial, gainful activity due to a medically determinable condition that is likely to result in death or continue for at least twelve months. 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A).

 Evidence of an impairment is not enough. That impairment must be so severe that the claimant is not only unable to perform his past work, but also, considering his age, education and work experi-

ence, is precluded from engaging in any gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1520(f), 416.920(e), (f); *Bowen*, 482 U.S. at 142, 107 S.Ct. 2287; *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1120 (1st Cir.1986). Numerous provisions of the Act emphasize the requirement that medical evidence must confirm the existence of the alleged disability. *See, e.g.*, 42 U.S.C. §§ 416(i)(1), 423(d)(1), (3), (5), and 1382c(a)(3)(A). Whenever a plaintiff is partially, but not totally, disabled by his impairments, he is not disabled within the meaning of the Act. *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir.1965).

## C. The Findings of the Administrative Law Judge

In evaluating Monteiro's application for benefits, the ALJ applied the five-step analysis for determining eligibility prescribed by 20 C.F.R. § 404.1520. *See Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). The first two factors are threshold tests. If the claimant is employed or does not have a severe impairment, then he is deemed not to be disabled. 20 C.F.R. § 404.1520(a)-(c). Under the third test, if the impairment meets or exceeds the criteria listed in 20 C.F.R. Part 404, Subpart P, App. 1, the claimant is automatically considered disabled. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairment does not prevent him from performing work of the kind he has done in the past, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if the claimant's impairment does not prevent him from performing other work of the sort found in the national economy, he is not disabled. 20 C.F.R. § 404.1520(f).

Having determined that Monteiro had not been employed since March 1, 1993,

the ALJ proceeded to apply the remaining tests set forth in 20 C.F.R. § 404.1520.

### 1. *impairment*

In the instant case, the medical evidence establishes that, as of the 1998 hearing, Monteiro had a medically verifiable impairment capable of causing discomfort. The ALJ reviewed the submitted medical reports and found that Monteiro had an impairment because she suffered from a degenerative joint disease of the cervical spine which causes significant, vocationally-relevant limitations. The ALJ concluded, however, that she did not have an impairment equivalent in severity to the criteria for any listed impairment under 20 C.F.R., Part 404, Subpart P, App. 1. Having reviewed the medical record, this Court finds that there is substantial evidence to support the ALJ's conclusion.

The mere presence of an impairment does not entitle a plaintiff to disability benefits. *Tsarelka v. Secretary of Health and Human Services*, 842 F.2d 529, 534 (1st Cir.1988). Rather, the evidence must demonstrate that the impairment or combination of impairments produces functional limitations which are either equivalent to one of certain listed impairments or preclude the claimant from engaging in any of his past work or in any work in the national economy. *McDonald*, 795 F.2d at 1120. If Monteiro can perform any of her past work or engage in other work, considering her age, education, work experience and functional capacity, then she is not "disabled" under the Act. *Id.*

### 2. *residual functional capacity*

After determining that Monteiro did not have an impairment under 20 C.F.R., Part 404, Subpart P, Appendix 1, the ALJ addressed her residual functional capacity ("RFC"). The term RFC is used to describe the range of work activities that a

claimant can perform despite his or her impairments. The ALJ correctly noted that, in assessing Monteiro's RFC, he must consider her subjective allegations in light of several statutorily enumerated factors. 20 C.F.R. § 404.1529; *Gray v. Heckler,* 760 F.2d 369, 374 (1st Cir.1985). A claimant's subjective allegation of symptoms is not, however, itself evidence of a disability; there must be a medical condition reasonably expected to produce those symptoms. 20 C.F.R. § 404.1529.

■ The ALJ reviewed the record, properly considering the relevant factors, and found that although Monteiro lacked the RFC to return to her past relevant work which required her to lift more than 25 pounds and perform strenuous activities now precluded by her impairment, she could perform "light work" as defined in 20 C.F.R. § 404.1567. Monteiro contends that the ALJ failed to consider her testimony regarding her constant pain, limited ability to sit or stand and limited ability to lift more than 5 pounds. The ALJ did indeed consider that testimony, but questioned the credibility of Monteiro's statements concerning her impairment and its impact on her ability to work. This Court must afford great deference to the ALJ's credibility determinations with regard to Monteiro's complaints of inability to work. *See, e.g., Perales,* 402 U.S. at 400, 91 S.Ct. 1420; *Irlanda Ortiz,* 955 F.2d at 769; *Evangelista,* 826 F.2d at 141.

Although conceding that Monteiro "has a medically determinable impairment that could intermittently cause some discomfort", the ALJ found her alleged limitations excessive in light of the objective medical evidence. For example, Dr. Dilmaghani's records revealed that pain was elicited only on extreme ROM of the cervical spine. Moreover, when examined in October and December of 1996, Monteiro retained full ROM in her shoulders, el-

bows, wrists and hands, and her neurological examinations were normal. In fact, the only functional limitation placed on Monteiro by Dr. Dilmaghani was no heavy lifting.

The ALJ also referred to the transcript of the 1998 hearing, at which Monteiro stated that she has good and bad days, but is nonetheless able to cook, manages a small garden, drives locally, reads, watches television and walks. Monteiro further testified that she had flown to Portugal in July of 1998, shortly before the hearing, despite claiming to be able sit for no more than 20 to 30 minutes.

The ALJ next considered whether the Social Security Administration had met its burden of proof to show that jobs which Monteiro could perform based upon her age, experience and condition existed in sufficient numbers in the national economy. In making that determination, the ALJ applied Rule 202.16 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, App. 2 ("the Grid"). Contrary to Monteiro's assertion, the ALJ took into consideration her age, illiteracy in English and unskilled work background. Specifically, he found that Monteiro 1) was a "younger individual" (48 years old on the date her insured status expired), 2) had a "limited" education (seventh grade), 3) was illiterate in English, and 4) had an "unskilled" work background. Grid Rule 202.16 thus dictated a finding of "not disabled".

### IV. *Conclusion*

■ In reviewing the ALJ's decision, this Court is limited to determining only whether there was substantial evidence in the record to support the finding that Monteiro is not disabled within the meaning of the Act. *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir.1981). This Court finds

that there is substantial evidence in the record to support the Commissioner's determination that Monteiro was not entitled to receive disability benefits because she failed to establish that she was disabled.

## ORDER

For the foregoing reasons:

1) the Plaintiff's motion for summary judgment (Docket No. 6) is DENIED; and

2) the Commissioner's motion to affirm his decision (Docket No. 8) is ALLOWED.

So ordered.