Horan v. SSA                    CV-03-232-M    05/03/04

UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Deborah L. Horan,
      Claimant

      v.                                    Civil No. 03-232-M
                                            Opinion No. 2004 DNH 076
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
      Respondent


                         **O R D E R**


      Pursuant to 42 U.S.C. § 405(g), claimant, Deborah Horan,

moves to reverse the Commissioner's decision denying her

application for Supplemental Security Income Payments under Title

XVI of the Social Security Act, 42 U.S.C. § 1382 (the "Act").

Respondent objects and moves for an order affirming her decision.

For the reasons set forth below, the Commissioner's motion for an

order affirming her decision is granted.


                      **Factual Background**

I.    Procedural History.

      In February of 1993, claimant filed an application for

supplemental security income ("SSI") payments under Title XVI of

the Act.  That claim was denied.  Subsequently, in April of 1998,

claimant filed a second application for SSI benefits. That claim, too, was denied. Most recently, on January 26, 1999, she filed a third claim for SSI benefits, alleging that she was disabled due to back pain, neck pain, and depression. The Social Security Administration denied her application initially and on reconsideration. Claimant then sought an administrative hearing.

On July 13, 2000, claimant, her attorney, and a vocational expert appeared before an Administrative Law Judge (ALJ) who considered her claims de novo.[1] The ALJ issued his order on September 28, 2000, concluding that, although subject to some restrictions, claimant was capable of performing light work and was not, therefore, disabled. On October 1, 2002, the Appeals Council denied claimant's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.

_____

[1] The ALJ's decision states that the hearing was held on January 26, 1999. That was, however, the date on which claimant filed her application for benefits. Accordingly, the court has assumed that the ALJ's reference to a hearing on January 26, 1999, is simply a typographical error. See Transcript at 24, Transcript of Administrative Hearing (bearing a date of July 13, 2000). See also Joint Statement of Material Facts at 1 (in which the parties agree that the hearing was held on July 13, 2000).

In response, claimant filed this timely action, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.[2] Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 5). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 7). Those motions are pending.

II. Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 8), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

---

[2] Claimant also seems to suggest that the ALJ's decision should be reversed (or, at a minimum, vacated) because there is substantial evidence in the record to support her assertion that she is disabled. See, e.g., Claimant's motion at 3. Even if that is true, however, it does not compel the conclusion that the ALJ's decision must be reversed or vacated. Under the governing standard of review, the court's primary focus is not on whether a claimant's position is supported by substantial evidence. Instead, it must determine whether the ALJ's decision is supported by substantial evidence. When both views are supported by substantial evidence, the court is obligated to affirm the ALJ's decision.

## Standard of Review

I.   Properly Supported Factual Findings by the ALJ
     are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[3] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different

---

[3]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

4

conclusion, so long as it is supported by substantial evidence."). See also Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See

<u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health & Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking SSI payments is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual

6

civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals a listed impairment;

(4)  whether the impairment prevents the claimant from performing past relevant work; and

(5)  whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 416.920.  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

8

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the determination that claimant is not disabled.

## Discussion

I. <u>Background - The ALJ's Findings</u>.

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 416.920. Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since January 26, 1999 (her alleged onset of disability). Next, the ALJ concluded that the medical evidence of record indicates that claimant has an "adjustment disorder, disorders of the back, discogenic and degenerative, impairments which cause significant vocationally relevant limitations." Transcript at 17. Nevertheless, he concluded that claimant suffered from no impairment(s) which met or equaled an impairment listed in Appendix 1 of the pertinent regulations.

Next, the ALJ assessed claimant's residual functional capacity ("RFC") and concluded that she retained the ability to perform light work, "diminished by significant non-exertional limitations which make it impossible for her to work in exposure to environmental irritants, extreme cold, extreme heat, humidity, dust[,] fumes[,] or odors." Transcript at 20. He also concluded that claimant lacks the ability to read and write and can only perform simple tasks. Finally, he determined that she could stoop, climb, kneel, crouch, and crawl only occasionally and required the ability to sit or stand at will. Id.

Given claimant's RFC, and based upon the testimony of the vocational expert, the ALJ concluded that claimant could not return to her prior work as a cleaner, but was capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, he concluded that she was not disabled, within the meaning of the Act.

II.  Claimant's Assertions of Error.

In support of her assertion that the ALJ's decision should be reversed or, at a minimum, vacated, claimant advances three

10

arguments.  First, she says the ALJ incorrectly determined her RFC by failing to consider the combined disabling effect of her impairments.  Next, in a related argument, she claims the ALJ erred in concluding that she retained the ability to perform a limited range of light work; instead, she asserts that the ALJ should have found her capable of, at most, sedentary work. Finally, claimant says the ALJ erred in determining her educational background and her ability to adjust to other work found in the regional and national economy.

     A.   <u>Claimant's RFC and the Effect of Claimant's Multiple Impairments</u>.

In determining claimant's RFC, the ALJ properly considered such factors as: (1) claimant's ability to care for herself and her two children and to prepare all meals for the family; (2) her ability to perform household cleaning activities; and (3) her ability to shop for the family (with help carrying heavy bags of groceries).  The ALJ also considered the report prepared by the state agency medical consultant, who opined that claimant was capable of carrying 10 pounds frequently and 20 pounds occasionally; could climb, balance, stoop, kneel, crouch, or

11

crawl only occasionally; and was precluded from performing tasks
that required overhead reaching or repetitive bending.

The record contains substantial evidence to support the
ALJ's finding.  Among other things, it contains references to
claimant's efforts to obtain notes from her physicians excusing
her from work.  Those efforts were unsuccessful.  In a note dated
December 11, 1998, J. Gavin Muir, M.D. opined that claimant has a
low tolerance for pain and diagnosed her with "chronic low back
pain; abdominal pain, unknown resolution; question of
somatization."  He also noted that she was not entirely compliant
in taking her medications.  He concluded that:

> At this time, given that I have not seen her in over a
> month, she certainly is able to work in all capacities.
> She would be able to walk, sit and stand without
> problem through a typical 8-hour day.  I believe her
> weight restriction should be limited to 20 pounds
> occasionally and 10 pounds frequently.  The patient has
> received some improvement with conservative measures
> such as non-steroidal anti-inflammatory drugs, and I
> believe continued use of this family of drugs with the
> possibility of physical therapy if it persists could
> help her make a full recovery.

Transcript at 213.  In January of 1999, Dr. Muir reaffirmed his
view that claimant was not precluded from gainful employment,

12

saying "I don't think that she should be removed from the work force at this time."  Id. at 214.  He repeated that view again in April.  Id. at 216.

More recently, a physical therapist who had been treating claimant made the following observations in claimant's discharge note:

> [Claimant] was seen this afternoon and is reporting that her neck and back pain has not changed and that she has had a headache for the past four days.  She rates her headache as a 10 out of 10 and her back pain as 8 out of 10.  She comes into the clinic with her two children who are running around the clinic.  [Claimant] was able to chase and pick up her children without significant or obvious complaints of pain.

Id. at 294.  In light of those observations, there is at least a suggestion that claimant may tend to overstate the severity of her pain.  And, given the other record evidence, the ALJ's decision to discount her subjective complaints of pain is supported by substantial evidence.

For the reasons set forth above, as well as those discussed in greater detail in the Commissioner's memorandum, the court concludes that there is substantial evidence in the record to

support the ALJ's determination that claimant retains the RFC to perform the exertional demands of a range of light work, subject to limitations caused by her inability to work in certain environments, her inability to stoop, crawl, or kneel more than occasionally or to bend repetitively, her need to alternate between a seated and standing position, and her inability to read or write.

The record does not support claimant's assertion that the ALJ failed to consider the combined effect of her multiple impairments. As is evident from the ALJ's conclusions regarding claimant's RFC, he plainly took into consideration her multiple impairments when determining the level (and type) of physical exertion she was capable of performing. For example, although the record contains minimal evidence of claimant's asthma and its effect on her ability to perform work-related tasks, her RFC accounts for that ailment by limiting her to working in environments that are free from environmental irritants and dust. It also accounts for her intellectual abilities by limiting her to employment that does not require her to perform more than simple tasks, to follow complex instructions, or have the ability

14

to read or write.  It also accounts for her need to alternate between a seated and standing position at will.

        B.    <u>Claimant's Educational Background and Her Ability to Adapt to Other Work in the National Economy</u>.

Next, claimants says the ALJ erred in concluding that she "has a high school education."  Transcript at 22.  Specifically, she takes issue with the ALJ's failure to specifically acknowledge that, while she graduated from high school, she was enrolled in so-called "special education" classes.  What claimant seems to suggest is that the ALJ erred in concluding that, notwithstanding her limited ability to read and write, she has the ability to adapt to a number of jobs in the national economy.  Instead, says claimant, the ALJ should have found that she is "illiterate or limited or less."

The label the ALJ used to describe claimant's abilities is not critically important in the context of this case, since he did not rely exclusively on the Medical Vocational Guidelines (also known as the "Grid") to direct his finding of no disability.  Instead, he posed a series of questions to a vocational expert, taking into consideration each of the

limitations from which he found claimant suffered.  See, e.g.,
Transcript at 20 ("Strict application of [the Grid] is not
possible, however, as the claimant has non-exertional limitations
which narrow the range of work she is capable of performing.").
With regard to claimant's limited ability to read and write, the
ALJ specifically instructed the vocational expert to exclude from
consideration any jobs that might involve any reading or writing.
The ALJ's hypothetical also took into account each of claimant's
other limitations.

> [Claimant] has a residual functional capacity for light
> and sedentary work, but she has limitations.  She's
> unable to perform the full range of that work.  For
> instance, she has postural limitations.  The medical
> evidence shows she has postural limitations, which I
> would say involve the ability to only occasionally
> climb, stoop, kneel, crouch and crawl.  Plus, she has
> asthma without too much evidence showing how severe it
> is.  But I'm going to assume, based on what she's
> testified to, that she must avoid concentrated exposure
> to cold, heat, wetness, humidity, fumes, odors, dust,
> gases, poor ventilation.  Ms. Ferro [attorney for
> claimant], you can add anything you want to that in
> your own hypothetical if you feel it's not all-
> inclusive.  Any work environment, for her, must involve
> tasks, non-complex instructions.  She has no useful
> work ability to read and write.  By that, Ms. Ferro, I
> mean that as far as reading and writing is concerned,
> if she had a job that required that, she could not do
> that type of job.  So I want to exclude those jobs.  As
> I said, simple tasks, non-complex instructions.  She is

> unable to work at a production pace. And lastly, she
> needs a sit/stand option at will.

Id. at 63-64. When asked, claimant's attorney declined to supplement the limitations presented by the ALJ is his hypothetical. Id. at 68. And, based upon that hypothetical, the vocational expert identified three jobs in both the national and regional economy that claimant might perform - each of which is available at both the light and sedentary exertional level. Id. at 65-67.

Finally, although the precise nature of her argument is unclear, claimant seems to suggest that the ALJ erred by failing to account for her "mental retardation and autism" in his hypothetical to the vocational expert. See Claimant's memorandum at 8. The record does not, however, support claimant's suggestion that she suffers from either mental retardation or autism. Claimant's "Psychiatric Review Technique Form" (the documentary evidence in the record upon which claimant relies) merely indicates that she suffers from a "learning disability," which is one sign and/or symptom of retardation and autism. See Transcript at 80-81. All other signs and symptoms of retardation

17

and autism (e.g., mental incapacity, I.Q. of 70 or less, gross deficits of social and communicative skills, etc.) were, however, absent.  Id.

It is, therefore, inaccurate to say that claimant has been diagnosed with either mental retardation or autism.  Nor was it error for the ALJ to omit such mental deficits from the hypothetical he posed to the vocational expert.  And, perhaps more to the point, the record suggests that claimant is fully capable of making the necessary adjustments to other work available in the national and regional economy.  For example, in his "Comprehensive Psychological Profile" of claimant, Robert W. Mullaly, Ph.D., wrote:

> With regard to sensorium functions, she is essentially clear, lucid, intact, and responsive.  She seems to be at least of average intelligence, articulate, and socially skilled in her presentation.  She is oriented as to person, place and time.  She shows no primary disturbances in memory.  There is no specific disturbance in attention, concentration or focus, persisten[ce], pace or participation in the present interview.  Her general knowledge, fund of information seemed consistent with her past educational and employment experiences.  There does not seem to be any

> deterioration or decompensation noted in either cognitive or affective functioning in this mental status examination.

Transcript at 264. Dr. Mullaly diagnosed claimant as suffering from "an adjustment disorder" with "mixed symptoms of anxiety and depression [which] does not meet the criteria for [a] more serious mood disorder." Id. at 266. As to claimant's specific ability to adapt to the demands of work available in the national and regional economy, Dr. Mullaly concluded that there "does not seem to be any primary psychiatric disorder that would interfere with her adaptation to work or work-like situations." Id.

## Conclusion

For the reasons set forth above, as well as those in the Commissioner's memorandum, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the date of his decision. Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 5) is denied, and the Commissioner's motion to affirm her decision (document no. 7) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 3, 2004

cc:   James W. Craig, Esq.
      David L. Broderick, Esq.